**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 96-2484

First National Bank; Eureka State Bank,    *
                                            *

           Appellants,         *

                                           *    Appeal from the United States

        v.                        *    District Court for the

                                           *    District of South Dakota.

Herbert Warren Allen, III; Donna Mae    *

Allen,                                       *

                                           *

           Appellees.         *

_____

Submitted: February 14, 1997
Filed: July 10, 1997

_____

Before MAGILL,[1] BEAM, and LOKEN, Circuit Judges.

_____

MAGILL, Circuit Judge.

First National Bank of Eden (Eden Bank) and Eureka State Bank (Eureka Bank) (collectively the Banks) brought a motion before the bankruptcy court[2] to determine their

_____

[1] The Honorable Frank J. Magill as an active judge at the time this case was submitted and assumed senior status on April 1, 1997, after the opinion was filed.

[2] The Honorable Irvin N. Hoyt, Chief Judge, United States Bankruptcy Court for the District of South Dakota.

status as unsecured creditors.  The bankruptcy court found that the Banks had

waived their unsecured claims. The district court[3] affirmed the decision of the bankruptcy court, and the Banks now appeal to us. We affirm.

## I.

The Banks made substantial agricultural loans to Herbert Warren Allen III and Donna Allen. The Allens subsequently defaulted on the loans. On December 18, 1986, the Banks brought foreclosure actions against the Allens. Eden Bank obtained a judgment in state court for $79,376.29. Eureka Bank obtained a judgment in state court for $325,611.23.

On February 19, 1987, the Allens filed for bankruptcy under Chapter 12 of the Bankruptcy Code. In their petition, the Allens listed their obligation to Eden Bank as $66,247.87, plus interest, and their obligation to Eureka Bank as $285,022.64, plus interest. Both of these obligations were secured by approximately 1129 acres of farmland owned by the Allens. On April 6, 1987, Eden Bank filed its proof of claim with the bankruptcy court for $77,554.41. On April 15, 1987, Eureka Bank filed its proof of claim with the bankruptcy court in the amount of $321,567.81.

The Allens filed their first Chapter 12 plan of reorganization on May 19, 1987 (May 1987 plan). The May 1987 plan listed the Banks as secured creditors in the combined amount of $285,027.64, plus interest. Because the value of the 1129 acres

---

[3]The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota.

of farmland was far less than the total amount that the Allens owed to the Banks, the May 1987 plan proposed to pay the Banks only a total of $99,140.00 on their combined secured claims. The rest of the Banks' combined claims, $185,887.64, was listed as an undersecured claim. The May 1987 plan listed only two unsecured creditors, Richard Bjerk and Hoysler Associates. Their unsecured claims totaled $61,400.00.

Under the terms of the May 1987 plan, however, none of the undersecured nor the unsecured creditors were to receive any payments for their claims.

The Banks objected to the May 1987 plan. The Banks argued that the reorganization plan should require the Allens to apply their projected disposable income towards the amounts owed to both undersecured and unsecured creditors. In response to the Banks' objections, the Allens filed an amended Chapter 12 plan on October 20, 1987 (October 1987 amended plan).

Under the "Designation of Classes of Claims" section of the October 1987 amended plan, Richard Bjerk and Hoysler Associates were listed as having unsecured claims totaling $61,637.84, and the Banks were listed as having an undersecured claim in the amount of $154,612.00. However, the "Treatment of Claims" section of the October 1987 amended plan--the section that set out how all of the creditors' claims would be handled under the plan--provided that Eden Bank would receive only $31,270.00 on its secured claim. The treatment of claims section of this plan listed unsecured creditors Richard Bjerk and Hoysler Associates, but no mention was made of Eden Bank's undersecured claim. The October 1987 amended plan still provided that no unsecured or undersecured creditors would receive anything on their claims. Finally, the treatment of claims section noted that Eureka Bank's secured claim was to be negotiated later, that Eureka Bank was also a possible undersecured creditor whose undersecured claim would be negotiated at a later time, and that the results of any negotiations were to be included as part of the October 1987 amended plan.

On November 20, 1987, the bankruptcy court entered an order confirming the October 1987 amended plan (November 1987 confirmation order). The November 1987 confirmation order noted that all secured claim holders, except Eureka Bank, had accepted the amended plan. The October 1987 amended plan provided that it would apply to Eureka Bank if the Allens and Eureka Bank reached an agreement as to the

value of Eureka Bank's claims. Neither bank appealed the November 1987 confirmation order.

Eureka Bank and the Allens negotiated the value of Eureka Bank's claims, and on October 25, 1988, Eureka Bank and the Allens agreed to a stipulate to the value of Eureka Bank's secured claim (October 1988 stipulation). In the October 1988 stipulation, the parties agreed that the value of Eureka Bank's secured claim was $125,000. This stipulation, however, did not indicate that Eureka Bank was still pursuing an undersecured claim.

On December 27, 1988, the bankruptcy court modified the confirmed October 1987 amended plan to make the October 1988 stipulation a part of the plan. At the same time, the bankruptcy court confirmed the October 1987 amended plan with respect to Eureka Bank. Eureka Bank did not appeal this order. Thus, once the stipulation was added, the October 1987 amended plan provided for a combined total of $156,270.00 in secured claims for the Banks. Relative to the May 1987 plan, the Banks' negotiations had increased their secured claims by approximately $57,000. However, although the October 1987 amended plan still treated the unsecured claims of Richard Bjerk and Hoysler Associate in the treatment of claims section, the October 1987 amended plan did not treat the Banks' undersecured claims.

On February 17, 1990, debtor Herbert Warren Allen III inherited approximately 3156 acres of land from his deceased mother. On November 15, 1991, in preparation for discharge, the Allens filed their final report and accounting with the bankruptcy court. This report did not include the inheritance that Herbert Warren Allen III had received from his deceased mother on February 17,

1990.  The trustee of the Allen bankruptcy estate, trustee A. Thomas Pokela, filed an objection to the discharge on the ground that the inheritance could be used to pay unsecured creditors.  On September 18, 1993, trustee Pokela filed a motion with the bankruptcy court for an order removing the Allens as debtors-in-possession because, even though Herbert Warren Allen III's

mother had died in February 1990, Herbert Warren Allen III had not yet probated his mother's estate. Because of this delay in probating the estate, trustee Pokela was unable to calculate how much disposable income existed that could be used to pay creditors of the Allen bankruptcy estate.

An evidentiary hearing on trustee Pokela's motion was held on August 23, 1994 (August 1994 disposable income hearing). Insofar as this hearing was to determine the disposable income available to pay the unsecured claims, the hearing was held for the benefit of all the unsecured creditors. Nevertheless, despite receiving notice of the August 1994 disposable income hearing, the Banks did not attend.

On January 13, 1995, the bankruptcy court ordered that the real property inherited by Herbert Warren Allen III would be used to pay the unsecured creditors of the Allen bankruptcy estate (January 1995 order). Bankr. Mem. Op. (Jan. 13, 1995) at 6-8. In the order, the bankruptcy court specifically recognized that:

> [I]n a stipulation approved after confirmation of Debtors' plan, Eureka State Bank was not given any under or unsecured claim. Instead, the stipulation and testimony of Debtors' bankruptcy counsel, Philip Morgan, indicates the Bank received a higher secured claim in exchange for not being included in the class of unsecured claim holders. Thus, the only unsecured plan creditors are Richard Bjerk and Hoysler Associates, whose claims total $61,637.84.

Id. at 5-6. Also in its January 1995 order, the bankruptcy court ordered the Allens to file an amended property schedule to reflect the inheritance that Herbert Warren Allen III had received from his mother. Id. at 8. Finally, the bankruptcy court set a deadline for the trustee or any unsecured creditor to file a motion to modify the confirmed October 1987 amended plan. Id. This deadline was twenty days after the debtors filed their amended property schedule. Id.

The Banks received notice of the January 1995 order even though the Banks had failed to participate in the August 1994 disposable income hearing. The Banks did not file objections to the January 1995 order, nor did the Banks file a motion to modify the debtor's confirmed October 1987 amended plan of reorganization in their alleged capacity as undersecured creditors.

On January 27, 1995, debtor Herbert Warren Allen III died, leaving his wife, Donna Allen, as the sole remaining debtor. On January 31, 1995, Donna Allen, filed an amended property schedule that reflected the inheritance that her late husband, Herbert Warren Allen III, had received upon the death of his mother. Despite having just filed a new amended schedule that showed that the Allen bankruptcy estate now had money it could use to pay unsecured creditor claims, Donna Allen did not file a motion to amend the terms of the October 1987 plan to reflect the Allen bankruptcy estate's ability to pay the unsecured creditors' claims.

On April 5, 1995, John S. Lovald replaced trustee Pokela as the Allen bankruptcy estate trustee. Trustee Lovald notified the bankruptcy court that he would file the needed motion to modify the confirmed October 1987 amended plan so that the claims of the unsecured creditors could be paid. Trustee Lovald ultimately filed this motion on June 2, 1995 (June 1995 motion). In the June 1995 motion, the property inherited by Herbert Warren Allen III upon the death of his mother was valued at $143,071.00. Like all of the other papers filed concerning the Allen bankruptcy estate, this motion identified Richard Bjerk and Hoysler Associates as the only unsecured creditors in the proposed payment schedule.

On June 27, 1995, the Banks filed a joint objection to trustee Lovald's June 1995 motion. Eureka Bank claimed that it still had an unsecured claim of $125,000.00, and Eden Bank claimed that it still had an unsecured claim of $32,002.95.

On July 3, 1995, Donna Allen responded to the Banks' objections. Donna Allen pointed out that, although the Banks had notice of the August 1994 disposable income hearing, the Banks neither attended the August 1994 disposable income hearing nor objected to the January 1995 order of the bankruptcy court that resulted. Donna Allen argued that the Banks are consequently bound by the bankruptcy court's January 1995 order that listed Richard Bjerk and Hoysler Associates as the only unsecured creditors that would be treated under the plan.

The Banks filed a motion to determine their unsecured status on July 24, 1995. On that same day, trustee Lovald sent a letter to the bankruptcy court informing the bankruptcy court that the Banks' motion had to be decided before the plan could be modified to show how the inherited property would be distributed. Trustee Lovald also informed the bankruptcy court that if Eureka Bank's unsecured claim were paid the other unsecured claims could not be paid.

The bankruptcy court held a hearing on the status of the Banks' unsecured claims on August 28, 1995. At the hearing, the Banks acknowledged that the October 1987 amended plan's treatment of claims section did not include an unsecured claim for Eden Bank, and that the November 1988 order confirming the plan with respect to Eureka Bank did not state that Eureka Bank retained an unsecured claim. Nevertheless, the Banks argued that the Banks retained their unsecured claims notwithstanding that the bankruptcy court's January 1995 order directing the trustee to distribute the inherited assets to Richard Bjerk and Hoysler Associates, the only unsecured creditors addressed in the treatment of claims section of the October 1987 amended plan. The Banks argued that the bankruptcy court's January 1995 order could not be used to invalidate the Banks' unsecured claims because the status of the Banks' unsecured claims was not the issue before the bankruptcy court at that time, and because the Banks had not participated in the matter that was before the bankruptcy court.

-11-

On October 30, 1995, the bankruptcy court held that, even if the Banks were not bound by the January 1995 bankruptcy order and findings, the Banks had waived their unsecured claims. Bankr. Mem. Op. (Oct. 30, 1995) at 7. The bankruptcy court reached this conclusion because: (1) the October 1987 amended plan's treatment of claims section did not treat either of the Banks as holders of unsecured claims, id. at 2, 7; (2) the Banks had failed to assert their unsecured claims at the November 1987 confirmation hearing, id. at 7; (3) the October 1988 stipulation entered into between Eureka Bank and the Allens did not mention Eureka Bank's undersecured claims even though the October 1987 amended plan recognized that Eureka Bank might hold both secured and unsecured claims, id.; (4) "[n]either bank appealed the [confirmation order or the subsequent order approving the October 1988 stipulation] on the grounds that their unsecured claims had been omitted," id.; (5) the bankruptcy court specifically stated in the January 1995 order entered after the August 1994 disposable income hearing that there were only two unsecured creditors left, Richard Bjerk and Hoysler Associates, id. at 3; and, (6) although "[b]oth [Banks] argued that they had not relinquished their unsecured claim during negotiations for plan treatment[,] . . . . they acknowledged [that] they had not specifically negotiated and stated the treatment of their respective unsecured claims in the plan or subsequent stipulation." Id. at 5. In light of these facts, the bankruptcy court concluded that a finding that the Banks had retained their undersecured claims would be contrary to the confirmed October 1987 amended plan and that such a finding would prejudice Donna Allen and the unsecured claimholders, Richard Bjerk and Hoysler Associates, who had relied on the stated terms of the confirmed October 1987 amended plan. Id. at 7.

-12-

The Banks appealed the bankruptcy court's decision to the district court.  In its Memorandum Opinion of April 30, 1996, the district court affirmed the bankruptcy court's decision and held that the Banks had waived their unsecured claims.  Mem. Op. (Apr. 30, 1996) at 7-8.  The Banks now appeal to this Court.

## II.

As a preliminary matter, we must determine whether we have jurisdiction to hear this appeal. Both parties have argued that this Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(d) (1994), and we agree.

Although a bankruptcy court order need not resolve all issues raised by the bankruptcy for that order to be final and reviewable under § 158(d), the order must resolve all of the issues pertaining to the discrete claim for which review is sought. See In re Woods Farmers Coop. Elevator Co., 983 F.2d 125, 127 (8th Cir. 1993). This Circuit has adopted a three-factor test to determine whether a bankruptcy court order is final for purposes of § 158(d). See In re Broken Bow Ranch, Inc., 33 F.3d 1005, 1007 (8th Cir. 1994). To determine whether a bankruptcy court order is final and reviewable for purposes of § 158(d), this Court considers "the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order; (2) delay in obtaining review would prevent the aggrieved party from obtaining effective relief; and (3) a later reversal on that issue would require recommencement of the entire proceeding." Broken Bow Ranch, 33 F.3d at 1007 (quotations and citation omitted).

We conclude that all three of the Broken Bow Ranch factors favor our exercise of jurisdiction in this matter. First, regardless of whether this Court decides to recognize or deny the Banks' unsecured claims, the bankruptcy court is left with only the computational

-14-

tasks of distributing the assets of the Allen bankruptcy estate. Second, because the bankruptcy proceeding is on the verge of being completed pending the resolution of the dispute before this Court, a delay in review of the Banks' unsecured claims would serve no purpose. Finally, because the bankruptcy court would merely distribute the Allen bankruptcy estate's assets in accordance with the confirmed October 1987 amended plan if we were to deny jurisdiction, a later reversal of the bankruptcy court's order would force the bankruptcy court to redistribute the

assets of the bankruptcy estate. Accordingly, we conclude that we have jurisdiction to hear the appeal now before us.

## III.

The Banks argue the bankruptcy court erred when it held that the Banks had waived their unsecured claims. We disagree.

In reviewing the bankruptcy court's decision, we apply the same standard of review as did the district court. In re Miller, 16 F.3d 240, 242 (8th Cir. 1994). We review the bankruptcy court's legal conclusions de novo and its findings of fact under the clearly erroneous standard. Id. at 242-43.

To address the Banks' claim, we must start with the October 1987 amended plan. Even if we do not consider the fact that the Banks helped to negotiate the October 1987 amended plan and the fact that the Banks expressly agreed to the confirmation of the October 1987 amended plan, it is beyond dispute that the Banks are bound by the terms of that amended plan. See 11 U.S.C. § 1227(a) (1994) ("Except as provided in section 1228(a) of this title [relating to discharge from bankruptcy], the provisions of a confirmed plan bind . . . each creditor . . . whether or not the claim of such creditor . . . is provided for by the plan, and whether or not such creditor . . . has objected to, has accepted, or has rejected the plan."); see also Harmon v. United States, 101 F.3d 574, 582 n.5 (8th Cir. 1996); Rowley v. Yarnall, 22 F.3d 190, 194 (8th Cir. 1994); In re Plata, 958 F.2d 918, 920 (9th Cir. 1992); cf. In re Varat Enters., Inc., 81 F.3d 1310, 1317 (4th Cir. 1996) ("[A] confirmed plan of reorganization acts like a contract that is binding on all parties, debtor and creditors alike . . . . [A] party in interest's failure to object to a claim made on a debtor's assets prior to confirmation of

-16-

the debtor's reorganization plan may operate as a waiver, barring the party from asserting the objection later.").

Turning to the terms of the October 1987 amended plan, we note that the treatment of the Banks' alleged unsecured claims is conspicuously absent. The October 1987 amended plan expressly provides only for the treatment of the Banks' secured claims. Moreover, by its express terms the October 1987 amended plan only treats the claims of two unsecured creditors: Richard Bjerk and Hoysler Associates. Although this silence with respect to the Banks' alleged unsecured claims may not in and of itself compel the conclusion that the Banks waived their unsecured claims, this silence combined with the express treatment of only Richard Bjerk and Hoysler Associates as unsecured creditors strongly supports the conclusion that the Banks waived their unsecured claims when they negotiated and then agreed to the confirmation of the October 1987 amended plan. Cf. U.S. Term Limits, Inc. v. Thornton, 115 S. Ct. 1842, 1850 n.9 (1995) (favorably discussing the well-known maxim of documentary interpretation "expressio unius exclusio alterius.").

Furthermore, we recognize that waiver is ordinarily a matter of intent. See In re Benedict, 90 F.3d 50, 55 (2nd Cir. 1996) ("Waiver is generally defined as an intentional relinquishment of a known right." (quotations and citation omitted)); In re Christopher, 28 F.3d 512, 521 (5th Cir. 1994) ("Waiver may be established by showing that a party actually intended to relinquish a known right or privilege."); In re Garfinkle, 672 F.2d 1340 (11th Cir. 1982) ("Waiver is usually a question of fact since it concerns the intent of the parties."). The bankruptcy court concluded that the Banks intended to waive their unsecured claims, and we do not find this factual finding to be clearly erroneous.

According to the Banks, in negotiating the October 1987 amended plan, the Banks sought to maximize their secured claims because, at the time, the Allens did not have any assets that could be used to pay unsecured claims. The Banks have conceded that they recognized that "there would be nothing, absolutely nothing, left for unsecured and undersecured claims" and that "the [B]anks attempted to negotiate the best value for their secured claims they could obtain." Appellant's Br. at 19. Indeed, the Banks'

negotiations were extremely effective in bettering the Banks' secured claims positions: while the May 1987 plan proposed to pay the Banks a combined secured claim of $99,140, the October 1987 amended plan proposed to pay the Banks a combined secured claim of more than $156,000. In striking this deal, the Banks effectively gave away their speculative, unlikely chance of collecting on their large, unsecured claim in exchange for collecting a smaller claim with certainty. Thus, when the Banks concluded their negotiations, the Banks had effectively bargained for the certainty of receiving an extra $57,000 dollars on their secured claim by trading away the speculative possibility that enough money might one day enter the Allen bankruptcy estate to pay the Banks' unsecured claims. This $57,000 increase in the Banks' combined secured claim supports the bankruptcy court's conclusion that the Banks intended to waive their unsecured claims in order to increase their secured claims.

In addition, the Banks had every opportunity to insure that their unsecured claims were treated in the October 1987 amended plan. See In re Varat Enters., 81 F.3d at 1318 ("[B]ankrupcty creditors generally bear the burden of policing the plan's treatment of claims."). However, the Banks failed to pursue their unsecured claims in a timely manner or even make a timely effort to correct what they now allege to be the erroneous conclusion expressed by the bankruptcy court in its January 1995 order, that Richard Bjerk and Hoysler Associates were the only remaining unsecured creditors.

We thus conclude that the Banks waived their unsecured claims. The terms of the October 1987 amended plan, which the Banks helped to negotiate, do not treat the Banks' unsecured claims. Moreover, the record indicates that the Banks intended to waive their unsecured claims. For these reasons, we agree with the bankruptcy court that the Banks no longer have any unsecured claims.

Finally, we reject the Banks' argument that because the bankruptcy court is a court of equity, the Banks alleged unsecured claims should be allowed. The equities of this case are squarely against the Banks. The Banks waited a full five years after

Herbert Warren Allen III came into his inheritance before they first asserted that they had unsecured claims that needed to be addressed. The Banks did not object even after receiving a copy of the bankruptcy court's January 1995 order in which the bankruptcy court found that, under the October 1987 amended plan, the only remaining unsecured creditors were Richard Bjerk and Hoysler Associates. In light of all of these events, it is clear that the Banks sat on any unsecured claims that they might have had. Under color of an equitable claim, the Banks will not now be allowed to delay further the discharge of the Allen bankruptcy by asserting claims that the Banks could have easily preserved and protected if they had chosen to do so by negotiating for them to be treated in the October 1987 amended plan.

## IV.

For the foregoing reasons, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-20-