IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 00-60745
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ERNEST HENRY AVANTS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

January 7, 2002

Before KING, Chief Judge, and JOLLY and EMILIO M. GARZA, Circuit
Judges.

E. GRADY JOLLY, Circuit Judge:

In 1966, Ben Chester White was murdered.  The state of
Mississippi charged the appellee, Ernest Henry Avants, with the
murder.  Shortly before his state court trial in 1967, Avants made
incriminating statements to FBI agents.  Avants was later acquitted
on the state murder charge.

White was murdered on federal land.  So, many years later in
the year 2000, the federal government initiated this federal murder
prosecution against Avants.  During the course of these 2000
proceedings, the government sought to introduce as evidence
Avants's 1967 incriminating statements to the FBI.  The district

court suppressed the statements. The central issue was whether federal agents violated Avants's Sixth Amendment right to counsel during the 1967 interview. The trial court held that, because the FBI agents had initiated the conversation at a time when Avants was represented by counsel to defend him in the state prosecution, the agents violated Avants's Sixth Amendment right to counsel in obtaining the incriminating statements. It therefore granted Avants's motion to suppress the statements.

On appeal, the government now contends that the district court erred because Avants's Sixth Amendment right to counsel is offense-specific, and the federal and state murder charges do not constitute the "same offense" in this context. Thus, the government argues that Avants's right to counsel had attached only to the state murder prosecution at the time of the 1967 interview and had not attached with respect to the later federal prosecution. We agree.

We hold that the federal and state murder prosecutions in this case, although identical in their respective elements, are separate offenses for purposes of the Sixth Amendment because they were violations of the laws of two separate sovereigns -- specifically, the State of Mississippi and the United States. Therefore, because the Sixth Amendment is offense-specific, Avants's statements during the 1967 interview, when he was represented by counsel only in the state proceeding, are not barred in this federal proceeding.

2

Accordingly, we reverse the ruling of the district court and remand for proceedings not inconsistent with this opinion.

I

In 1966, an elderly African-American sharecropper, Ben Chester White, was found dead in Homochitto National Forest in Adams County, Mississippi. After a police investigation, Avants, Claude Fuller, and James Lloyd Jones were arrested and indicted by the state authorities for White's murder. Avants obtained counsel and was released on bond pending trial. During the police investigation of White's murder, Jones elected to turn state's evidence and to testify against Avants and Fuller.

Around the same time, the FBI was investigating the murder of Wharlest Jackson, a Mississippi civil rights worker killed by a car bomb in early 1967. On March 13, 1967, the FBI special agents assigned to the Jackson case, Allan Kornblum and Robert Boyle, went to Avants's house to question him about the Jackson murder. Although both Boyle and Kornblum were aware that Avants was a suspect in the Jackson murder -- primarily because he had been charged with murdering White -- neither agent was actively investigating the White murder.

When the agents reached Avants's house, they identified themselves and asked if they could speak with him. Avants voluntarily came out onto the porch, and the agents read him his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Avants told

3

the agents that he was represented by an attorney on the state murder charge, that he was aware of his rights, and that he did not wish to have an attorney present during the interview. The three men then discussed several civil rights crimes that had occurred recently in Adams County, including the White murder.

According to a contemporaneous FBI report completed by Boyle and Kornblum, at some point during the interview, Boyle asked Avants when his trial for White's murder was scheduled to begin.[1] Avants responded that he was ready to go to trial and was confident that he would be acquitted because the only witness against him, James Jones, was "out of his mind." Avants also said that his attorney had told him that he could not be convicted of killing White. According to Kornblum's suppression hearing testimony, Boyle asked Avants why he could not be convicted, and he replied that "you can't be convicted of killing a dead man." The agents then asked what Avants meant by that statement, and he responded "Yeah, I shot the nigger, but before I shot him [Fuller] had already shot him with a carbine, had emptied the full magazine of 15 rounds into him before I shot him. I blew his head off with a

---

[1] The district court reconstructed the sequence of the statements in the interview from the FBI report and from Kornblum's deposition and suppression hearing testimony. The trial court credited the 1967 report indicating that "Boyle initiated the subject of the Ben Chester White murder." Avants, Op. at 14-16. Relying on the language in the report and on Kornblum's equivocal deposition testimony, the court therefore rejected Kornblum's suppression hearing testimony that Avants initiated the conversation concerning White's murder. See id.

4

shotgun." The agents suggested that White might not have been dead, and Avants replied that "he had to be dead because of the number of shots fired into him by Fuller." Because the agents had not been assigned to investigate the White case, they asked no further questions on the matter.

In the late 1960s, Avants was acquitted of the state murder charge.

More than thirty years later, in June 2000, a federal grand jury sitting in the Southern District of Mississippi indicted Avants for aiding and abetting White's murder within the special maritime and territorial jurisdiction of the United States in violation of 18 U.S.C. §§ 1111 and 1112. During pre-trial proceedings, Avants moved to suppress his statements to the FBI agents during the 1967 interview. He argued that the statements were taken in violation of his Sixth Amendment right to counsel because he had retained an attorney in connection with the state murder charge, and the attorney was not present for the interview.

The district court held an evidentiary hearing in September 2000. Although the court found that Avants "knowingly, voluntarily, and intelligently" waived his Sixth Amendment right to counsel, it found that the waiver was invalid under Michigan v. Jackson, 475 U.S. 625 (1986), because the FBI had initiated the conversation concerning White's murder after Avants's Sixth Amendment right to counsel had attached and had been invoked. The

5

court therefore found that the statements were inadmissible as substantive evidence at trial. The district court proceedings were stayed pursuant to 18 U.S.C. § 3731, pending the government's appeal of the order suppressing Avants's statements.

## II

As we have noted, the initial issue in this appeal is whether the FBI agents violated Avants's Sixth Amendment rights during the 1967 interview when he was represented by counsel in the state court proceeding. The government now argues -- for the first time on appeal -- that Avants's rights never attached to the federal murder prosecution because the state prosecution and the federal prosecution are separate offenses for purposes of the Sixth Amendment. The government bases its position on the "dual sovereignty doctrine," which maintains that conduct in violation of a federal statute and a state statute constitutes two independent offenses, even if the statutes are identical, because the conduct violates the law of two separate sovereigns. For the reasons set out below, we find the government's argument persuasive.

This case, however, cannot be decided in such a straightforward manner. After addressing whether the "dual sovereignty" doctrine applies in the context of the Sixth Amendment, we must determine whether the government affirmatively waived the argument or whether the government only forfeited the argument by neglecting to raise it at trial. Because we conclude that the government forfeited but did not waive the argument, we

6

must then evaluate the argument under the plain error doctrine. We conclude that, under the law as it exists today, the district court's ruling constituted plain error and its suppression of Avants's 1967 statement must be reversed.

III

A

We begin our inquiry by laying out the legal framework for analyzing issues relating to the Sixth Amendment right to counsel and police interrogation. In Edwards v. Arizona, 451 U.S. 477 (1981), the Supreme Court held that, once a suspect in custody invokes the Fifth Amendment right to counsel, the police may not interrogate the suspect in the absence of counsel -- even if the suspect later attempts to waive that right. Under Edwards, any statement made by the suspect in response to police-iniated questioning after an invocation of the right to counsel violates the Fifth Amendment and must be excluded. The Supreme Court's decision in Michigan v. Jackson, 475 U.S. 625 (1986), extended the rule in Edwards to cases involving the Sixth Amendment right to counsel.[2] The Court held that, "if police officers initiate

---

[2] The holding in Edwards applies to cases pending on direct appeal at the time the case was decided by the Supreme Court. See Shea v. Louisiana, 470 U.S. 51 (1985). We assume without deciding that the holding in Michigan v. Jackson similarly applies to cases pending on direct appeal. Because this case has not yet gone to trial, we assume that Michigan v. Jackson requires the exclusion of Avants's statements if the Sixth Amendment right to counsel attached with respect to the federal charges at the time of the interrogation.

7

interrogations after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police initiated interrogation is invalid," and the resulting statements are inadmissible as substantive evidence against the defendant. Jackson, 475 U.S. at 636; see also Michigan v. Harvey, 494 U.S. 344, 348-49 (1990).

Michigan v. Jackson thus imposes two requirements for the application of the Edwards rule in the Sixth Amendment context. First, the right to counsel must have attached as to the offense in question at the time of the interrogation. Second, the defendant must have asserted the right to counsel at some point after the right attached and before the interrogation began. See Patterson v. Illinois, 487 U.S. 285, 290-91 (1988) (rejecting an argument that police interrogation concerning a charged offense is prohibited once Sixth Amendment right to counsel attaches where the defendant has not invoked the right). Once invoked at an arraignment or similar proceeding, the defendant cannot validly waive the right to counsel during a "police initiated interrogation" concerning the charged offense. If the defendant voluntarily and without police prompting initiates a conversation about the charged offense, however, any resulting statements are admissible against the defendant at trial. See Patterson, 487 U.S. at 291; Harvey, 494 U.S. at 352.

8

The initial question we address is whether Avants's right to counsel had attached with respect to the federal murder charge at the time of the 1967 interview.[3] As the Supreme Court explained in McNeil v. Wisconsin, 501 U.S. 171, 175 (1991), the Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." The Court reasoned that the Sixth Amendment right to counsel is "offense specific" and attaches only with respect to charged offenses that are the subject of adversary proceedings. See id. Even if the Sixth Amendment right to counsel has attached with respect to a charged offense and the defendant has invoked that right, police may elicit statements from the defendant about another, uncharged offense without violating the Sixth Amendment. See id. at 176.

In the present case, the government concedes that Avants's right to counsel had attached with respect to the state murder charge when he was questioned by Special Agents Kornblum and Boyle

---

[3] The government also argues that the district court erred on two other points. First, the government challenges the district court's determination that the agents' inquiries concerning White's murder constituted "police initiated interrogation" in violation of Jackson. Second, the government argues for the first time on appeal that the prophylactic rule announced in Jackson does not apply where the suspect is questioned outside police custody. Our ultimate holding obviates the need to reach these issues.

in 1967.  But the government argues -- for the first time on appeal -- that Avants's right to counsel had not attached with respect to this federal murder charge, which was not brought until 2000. Relying on the "dual sovereignty doctrine," the government contends that the state murder charge and the instant federal murder charge are distinct offenses for purposes of the Sixth Amendment because they are prosecuted by separate sovereigns.  Avants responds that the federal murder charge against him is effectively the same offense as the state murder charge that was pending in 1967.  Since his right to counsel had attached with respect to the state charge at the time of the interview, Avants reasons, his right to counsel must also have attached with respect to the identical federal offense.  We begin by assessing what constitutes the same offense under the Double Jeopardy Clause.

C

Ordinarily, offenses with identical elements would constitute the same offense under double jeopardy jurisprudence because, as the Supreme Court has said, two offenses are the "same offense" if neither offense "'requires proof of an additional fact which the other does not.'"  Brown v. Ohio, 432 U.S. 161, 166 (1977) (quoting Blockburger v. United States, 284 U.S. 299 (1932)).  However, the Supreme Court has long held that a defendant's conduct in violation of the laws of two separate sovereigns constitutes two distinct offenses for purposes of the Double Jeopardy Clause.  See Heath v. Alabama, 474 U.S. 82, 88-93 (1985); see also Abbate v. United

10

States, 359 U.S. 187, 193-94 (1959) (tracing the rule to cases decided in the 1850s). Under the Heath Court's interpretation of the "dual sovereignty doctrine," the federal government may thus prosecute a defendant after an unsuccessful state prosecution based on the same conduct, even if the elements of the state and federal offenses are identical. See id. at 93. The government argues that we must apply these principles to determine whether, in the Sixth Amendment context, an uncharged federal murder offense is the same as Avants's 1966 state murder charge. In evaluating this argument, we are significantly assisted by a Supreme Court case that was decided after the district court ruled on the motion to suppress.

In Texas v. Cobb, 121 S.Ct. 1335, 1343 (2001), the Supreme Court clarified the meaning of "charged offense" in the Sixth Amendment context.[4] There, the defendant, Raymond Cobb, initially admitted that he had committed a residential burglary but denied knowledge of the simultaneous disappearance of two people who lived in the burglarized residence. See id. at 1339. Based on this confession, the state indicted Cobb for burglary. Cobb was then appointed counsel and released on bond. See id. More than one year later, while Cobb's burglary trial was pending, his father informed the police that Cobb had admitted to killing one of the missing persons during the burglary. See id. After the police took Cobb into custody and advised him of his Miranda rights, he waived his rights and confessed to murdering both of the missing

---

[4] The Supreme Court decided Cobb after Avants's suppression hearing and after the government filed its opening brief in this appeal. Nevertheless, each party had an opportunity to present its view of the case in subsequent briefing.

11

persons -- all in the absence of his appointed counsel.  See id. On the strength of this confession, Cobb was eventually convicted of capital murder.  See id. at 1340.

The Texas Court of Criminal Appeals reversed the conviction, holding that the Sixth Amendment right to counsel attaches to uncharged offenses that are "'very closely related factually'" to charged offenses.  Cobb, 121 S.Ct. at 1340.  Because the uncharged capital murder offense was "'factually interwoven with the burglary,'" the court concluded that the defendant's Sixth Amendment right to counsel had attached with respect to the murder offense at the time of his confession.  Id.  The court therefore held that the defendant's confession was obtained in violation of his right to counsel and was inadmissible in his capital murder trial.  See id.  The state sought review in the Supreme Court, and the Court granted certiorari.

The Supreme Court disagreed with the Texas court.  It held that the Sixth Amendment right to counsel does not extend to uncharged offenses, even if they are "closely related to" or "inextricably intertwined with" charged offenses.  Cobb, 121 S.Ct. at 1343-44 (internal quotation marks omitted).  The Court emphasized that the Sixth Amendment right to counsel is "offense specific" and "attaches only to charged offenses."  Id. Particularly relevant to our analysis today, the Court saw "no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel."[5]

---

[5] Accordingly, the Court held that, once the right to counsel has attached and has been invoked with respect to a charged

12

Id. at 1343.

Thus, it seems rather clear that the Supreme Court would require us to apply double jeopardy principles in determining whether two offenses are the same in the Sixth Amendment context. As we have earlier observed, identical offenses under the respective laws of separate sovereigns do not constitute the "same offense" under the Double Jeopardy Clause. See Heath, 474 U.S. at 88-93. By concluding without limitation that the term "offense" has the same meaning under the Sixth Amendment as it does under the Double Jeopardy Clause, the Court effectively foreclosed any argument that the dual sovereignty doctrine does not inform the definition of "offense" under the Sixth Amendment. Stated differently, the Supreme Court has incorporated double jeopardy analysis, including the dual sovereignty doctrine, into its Sixth Amendment jurisprudence.[6] We now turn to apply the principle announced in Cobb to the case before us.

---

offense, the police may still question the defendant concerning an uncharged offense where "'each [offense] requires proof of a fact which the other does not.'" Id. at 1343 (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). The Court applied this analysis to the case before it and held that burglary and capital murder charges are not the "same offense" under Blockburger.

[6] In a supplemental filing, Avants contends that United States v. Red Bird, 146 F.Supp.2d 993, 1001 (D.S.D. 2001) stands for the proposition that, under Cobb, a federal charge and a state charge are the same offense for purposes of the Sixth Amendment. Although the court in Red Bird counseled against reading Cobb too broadly, the court did not specifically address whether Cobb requires application of the dual sovereignty doctrine in the Sixth Amendment context. Instead, the court simply held that two statutes that differ only with respect to a jurisdictional element are the "same offense" under the Blockburger test.

13

It is plain to see that the federal and state murder prosecutions against Avants are not the "same offense" under the Sixth Amendment because each was initiated by a separate sovereign. This is true notwithstanding that the elements of the Mississippi murder statute, MISS. CODE ANN. § 2215 (1956), and the federal murder statute, 18 U.S.C. §§ 1111-12, are virtually identical.[7]  See Heath, 474 U.S. at 88 ("When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offenses.'"); see also id. at 89 ("[T]he Court has uniformly held that the States are separate sovereigns with respect to the Federal Government. . . .").

To recap what we have earlier noted, when Special Agents Boyle and Kornblum interviewed Avants in 1967, the state had indicted Avants for murder under Mississippi law, and Avants had retained counsel to defend him in the state proceeding.  Thus, there is no question but that Avants's right to counsel had attached as to the state murder charge in 1967.  See Jackson, 475 U.S. at 636.  But because the federal charge is a separate offense for purposes of the Sixth Amendment and because the federal murder charge was not pending until the year 2000, no Sixth Amendment right to counsel

---

[7] To be punishable under the federal homicide statutes, the homicide must take place "[w]ithin the special maritime and territorial jurisdiction of the United States."  18 U.S.C. §§ 1111-12.  Although the Mississippi murder statute does not include this requirement, we have held that two statutes constitute the same offense under the Double Jeopardy Clause where the sole difference between the two statutes is a jurisdictional element.  United States v. Gibson, 820 F.2d 692, 698 (5th Cir. 1987).

14

had attached as to the federal murder charge.

Accordingly, we conclude that the district court erred in finding that Avants's Sixth Amendment right to counsel had attached with respect to the federal murder charge because he "had been arrested and indicted by the Adams County Grand Jury for White's murder." Avants, Op. at 7. We do not fault the district court because the question of attachment was not argued to the court. We must therefore go further.

IV

A

As we have earlier cautioned, merely concluding that Avants's Sixth Amendment right to counsel did not attach with respect to the federal murder prosecution at the time of the 1967 interview does not resolve this appeal. Avants contends that the government affirmatively waived this argument in the district court. If the government intended to abandon (i.e., waive) all arguments concerning whether Avants's right to counsel had attached, the government may not argue on appeal that the district court erred in concluding that Avants's right to counsel had attached. See United States v. Reveles, 190 F.3d 678, 683 (5th Cir. 1999). In contrast, if the government only neglected to raise -- and thus forfeited -- the argument in the district court, we review the district court's ruling for plain error. See Oden v. Oktibbeha County, Miss., 246 F.3d 458, 466 (5th Cir. 2001).

In United States v. Olano, the Supreme Court defined waiver as "the 'intentional relinquishment or abandonment of a known right.'" 507 U.S. 725, 733 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458,

15

464 (1938)). To determine whether the government waived a right or an argument, we must therefore look to evidence of the government's intent. See Matter of Christopher, 28 F.3d 512, 521 (5th Cir. 1994) ("Waiver may be established by showing that a party actually intended to relinquish a known right or privilege."); cf. First Nat'l Bank v. Allen, 118 F.3d 1289, 1294 (8th Cir. 1997) (observing "that waiver [of a bankruptcy claim] is ordinarily a matter of intent"); In re Garfinkle, 672 F.2d 1340, 1347 (11th Cir. 1982) ("Waiver [of a bankruptcy claim] is usually a question of fact since it concerns the intent of the parties.").

Avants argues that the government waived the argument that the state and federal murder charges are not the same offense by expressly conceding at trial that Avants's right to counsel had attached with respect to the federal murder charge at the time of the 1967 interview. To support this contention, Avants relies on the following exchange in the district court during the hearing on Avants's motion to suppress:

> [Government:] In this case the motion that the defendant has filed suggests two issues, and it occurs to the government that the principal thrust of their energy is directed to the Sixth Amendment issue.
>
> If the defendant is willing to concede the voluntariness issue as to the Fifth Amendment, then the government would be prepared to concede as to the Sixth Amendment issue that the defendant at the time of the [interview] in question *was represented by counsel*; and we can proceed on that matter. . . .
>
> The Court: Let me ask first, is there a Fifth Amendment issue?

16

> [Defense Counsel:] We have raised a Fifth Amendment issue. At this point I think that [the government] is quite correct in saying that our principal thrust has been towards the Sixth Amendment <u>Michigan v. Jackson</u> question. . . . I think that we could concede the Fifth Amendment voluntariness issue, your Honor and concentrate on the Sixth Amendment.
>
> The Court: All right. And, with that announcement, the government said that it would concede what point?
>
> [Government:] We will concede, your Honor, that there is an issue then before the court on the Sixth Amendment without conceding the rectitude of the defendant's argument. And we would be prepared to go forward with our witnesses at this time.

(emphasis added). Avants also points to the following statement by the district court during the suppression hearing reflecting its understanding of the government's position:

> Here the defendant had been indicted, but was out on bond. He was at home. I don't know when he was indicted; but, at any rate, . . . I think the government and the defendant both agree that not only did the right to counsel attach, but that he actually had counsel who was actively representing him.[8]

In our view, the government's representations before the district court do not support the broad interpretation advanced by Avants. To the contrary, in the exchange quoted above, the

---

[8] This remark could be taken to mean that, in the trial court's view, the government had conceded that Avants's right to counsel had attached with respect to the federal murder charge before the 1967 interview. The trial court's opinion, however, does not mention or rely on any such view of the agreement in its analysis of this issue.

17

government seems to have deliberately *avoided* making a blanket concession regarding the attachment of Avants's right to counsel. The government expressly conceded only that Avants was represented by counsel at the time of the 1967 interview and, therefore, that Avants had invoked his right to counsel. The government also conceded that Avants had raised "an issue" under the Sixth Amendment, without specifying further.[9] In response, the defendant indicated that the only issue before the district court was whether, under Michigan v. Jackson, Avants or Boyle initiated the conversation about the White murder. In framing the arguments attacking the admissibility of his incriminating statements, Avants thus placed the weight of his challenge on Michigan v. Jackson.

During the above exchange, the government never expressly conceded that Avants's right to counsel had attached with respect to the federal charge. Except for the Michigan v. Jackson question, no other Sixth Amendment argument was mentioned by either party. Indeed, the district court devoted its opinion almost entirely to determining who initiated the conversation between Avants and the FBI agents. We find no clear evidence from this exchange that the government intentionally abandoned all other potential arguments concerning the attachment of Avants's right to

---

[9] During argument in the trial court, the government later indicated its belief that "the motion to suppress turn[s] on the court's factual determination as to who initiated the White murder conversation . . . between Mr. Avants and the two FBI agents."

18

counsel.[10]

We further note that the issue raised by the government is purely legal and does not require additional fact-finding; that is, if we conclude that the federal and state murder charges are separate offenses under the Sixth Amendment, it follows as a matter of law that Avants's right to counsel had not attached to the federal charge at the time of the interview.[11]

Clearly, however, the government's failure to raise the issue it now argues on appeal constitutes a forfeiture of that argument. See United States v. Kelly, 961 F.2d 524, 528 & n.5 (5th Cir. 1992) (distinguishing between cases in which the government failed to raise an issue concerning probable cause and cases in which the

---

[10] Avants further argues that he relied on a broad interpretation of the government's concessions when he (1) abandoned the Fifth Amendment claim raised in his motion to suppress and (2) gave up the opportunity to develop "additional facts which might have shown that his Sixth Amendment right had attached with regard to the federal charge or have shown that the FBI was acting as an agent of the state in attempting to secure statements to be used at his state court trial." Given our ruling that the government did not waive the argument that Avants's right to counsel had not attached to the federal charge at the time of the 1967 interview, Avants's concessions in the trial court do not influence us in deciding this appeal. We should make clear, however, that on remand Avants may pursue his Fifth Amendment argument and his argument that the FBI agents colluded with state authorities in 1967 to circumvent Avants's Sixth Amendment rights. We, of course, express no opinion on the merits of either of these arguments.

[11] See United States for use of Wallace v. Flintco Inc., 143 F.3d 955, 971 (5th Cir. 1998) ("This Court generally refuses to consider issues not raised below unless the issue presents a pure question of law or an issue which, if ignored, would result in a miscarriage of justice.").

government "conceded that probable cause did not exist"), disapproved of on other grounds, United States v. Calverley, 37 F.3d 160 (5th Cir. 1994) (en banc). Accordingly, we review for plain error the district court's determination that Avants's right to counsel had attached at the time of the 1967 interview.[12]

B

Following United States v. Olano, 507 U.S. 725, 730-36 (1993), our plain error analysis proceeds in four steps. First, we determine whether the district court's conclusion was erroneous. See United States v. Dupre, 117 F.3d 810, 816 (5th Cir. 1997). Second, if the court erred, we determine whether the error was "clear and obvious" under the law as it exists at the time of the appeal. See id. ("'[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal--it is enough that an error be 'plain' at the time of appellate consideration.'" (quoting Johnson v. United States, 520 U.S. 461 (1997)). Third, we determine whether the error "'affect[s] substantial rights.'" Johnson, 520 U.S. at 467 (quoting Olano, 507 U.S. at 732). Finally, if all of these conditions are satisfied, we have discretion to reverse the trial court's judgment based on

---

[12] See FED R. CIV. P. 52(b); Kelly, 961 F.2d at 528 (applying plain error standard where government forfeited an issue by failing to raise it in the district court); Singleton v. Wulff, 438 U.S. 106, 121 (1978) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").

a forfeited error if we conclude that the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (citations and internal quotation marks omitted; alteration in original).

We have already concluded, under the first prong of Olano, that the district court erred in concluding that Avants's Sixth Amendment right to counsel had attached with respect to the federal murder charge at the time that he was interviewed by Boyle and Kornblum. See Olano, 507 U.S. at 732-33 ("Deviation from a legal rule is 'error' unless the rule has been waived.").

Under the second prong of the Olano plain error analysis, the law is plain that the Sixth Amendment is offense-specific and that a state offense is not the "same offense" as an identical federal offense in this context. Indeed, the Supreme Court's opinion in Cobb makes clear to us that we are to apply the dual sovereignty doctrine in the Sixth Amendment context. We therefore conclude that the district court's error is "clear and obvious" under the law as it exists today.[13] See Dupre, 117 F.3d at 816.

To satisfy Olano's third requirement that the error affect substantial rights, the appellant must generally "make a specific showing of prejudice" -- that is, the error "must have affected the

---

[13] We recognize here that the district court did not have the benefit of the Supreme Court's guidance in Cobb when it ruled on Avants's motion to suppress. Because we must conduct our review under the law as it exists on appeal, however, we find that the district court's ruling constituted plain error.

21

outcome of the district court proceedings." Olano, 507 U.S. at 734-35; see also United States v. Torrez, 40 F.3d 84, 87 (5th Cir. 1994) (same). In this case, the prejudicial effect of the error is beyond dispute. There is a high probability that, absent this error, the government would have prevailed on Avants's motion to suppress under the Sixth Amendment. Specifically, the federal agents could not have violated Avants's right to counsel as to this federal murder charge during the 1967 interview because his right to counsel had not yet attached with respect to the federal charge.

We therefore find, under the applicable law, that the district court's conclusion regarding the attachment of Avants's right to counsel as to the federal murder charge is plain error.

Finally, we must determine whether it is appropriate to exercise our discretion to reverse the district court's ruling in this case. On this point, we find it particularly important that the court's error resulted in the exclusion of Avants's startlingly candid admission that he shot White in the head with a shotgun after another individual had shot White fifteen times.[14] This statement is powerful evidence of guilt, the admission or exclusion of which would be highly likely to affect the outcome of the trial. We find that the court's erroneous exclusion of Avants's confession

_____

[14] Agent Kornblum testified during the suppression hearing that Avants's statement was "shocking" and that in his "40 years of law enforcement and intelligence experience, no one ha[d] ever confessed to committing a murder" in this manner.

22

seriously undermines the "fairness, integrity [and] public reputation of judicial proceedings" and, accordingly, exercise our discretion to reverse the district court's ruling.[15]  Johnson, 520 U.S. at 467.

V

In sum, we have decided today that, following the Supreme Court's decision in Cobb, there is no constitutional distinction between the definition of "offense" for purposes of the Sixth Amendment and the Double Jeopardy Clause of the Fifth Amendment. It follows that a federal offense and a state offense do not constitute the "same offense" under the Sixth Amendment -- even if the offenses are identical in their respective elements -- because they are violations of the laws of two separate sovereigns. Accordingly, because the right to counsel under the Sixth Amendment is offense specific, Avants's right to counsel had not attached with respect to the federal murder charge at the time of the 1967 interview.

Although the government failed to raise the issue of whether

---

[15] See Olano, 507 U.S. at 736-37; cf. Maine v. Moulton, 474 U.S. 159, 180 (1985) ("[T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at the time, would unnecessarily frustrate the public's interest in the investigation of criminal activities."); cf. also Pyles v. Johnson, 136 F.3d 986, 996 (5th Cir.) (observing that the defendant's "'own confession [was] probably the most probative and damaging evidence that [could] be admitted against him.'" (quoting Bruton v. United States, 391 U.S. 123, 139 (1968) (White, J., dissenting))), cert. denied, 524 U.S. 433 (1998).

23

Avants's right to counsel had attached and failed to argue the "dual sovereignty" doctrine in the trial court, we have determined that the government did not *waive* these arguments and is therefore not barred from raising them on appeal. Reviewing the district court's ruling under the plain error doctrine, we further hold that the district court erred, in view of the law existing at the time of the appeal, when it determined that Avants's Sixth Amendment right to counsel had attached with respect to the federal murder charge when Avants was arraigned on the state murder charge in 1966. We therefore reverse the district court's ruling and remand for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.