

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00339-CR

CURTIS WOODRUFF, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2014-403,191, Honorable Jim Bob Darnell, Presiding

December 15, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Curtis Woodruff, was found guilty by a jury of fraudulent use or possession of identifying information.[1] The State subsequently gave notice of intent to prove that appellant had twice previously been convicted of felony offenses for purposes of enhancement of punishment.[2] Appellant filed an election to go to the trial court on the issue of punishment. After finding the allegations of prior convictions for

---

[1] *See* TEX. PENAL CODE ANN. § 32.51(b)(1) (West Supp. 2015).

[2] *See id.* § 12.425(b) (West Supp. 2015).

felony offenses to be true, the trial court assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for 18 years. This appeal followed.

Appellant's appeal presents two issues for our consideration. First, appellant contends that the trial court committed reversible error by overruling his motion to suppress the testimony of the arresting officer. Second, appellant contends that the evidence was insufficient to sustain the jury's finding of guilt. We will affirm.

Factual and Procedural Background

On October 1, 2013, Officer Brad Sims, of the Lubbock Police Department, received a dispatch advising him that there was a possible burglary of a vehicle in progress in the 2000 block of 10th Street in the city of Lubbock. Sims was provided with a description of a black male wearing a blue and white striped shirt, wearing a blue bandana, and carrying a black bag. Sims proceeded to the area and began searching for the individual. Sims spotted appellant, who matched the description he had been given, in the parking lot of the Stripes convenience store adjacent to the intersection of Avenue Q and the Marsha Sharp Freeway.

Sims activated his emergency lights and made contact with appellant. Sims testified that appellant was wearing a light gray and blue striped shirt and a blue bandana on his head, had a black bag around his shoulder, and was carrying what appeared to be a black briefcase in his hand. Sims stated that, from a distance, the shirt appeared to be blue and white striped. Sims detained appellant and directed him to place all the items he was carrying on the ground, approach the patrol vehicle, and

2

place his hands on the vehicle. Sims then conducted a pat-down search of appellant for weapons. Sims testified that appellant was not free to leave after the initial encounter.

Sims then requested and received verbal consent to search appellant's pockets. Upon searching appellant's right front pocket, Sims found two debit cards that were not in appellant's name. The cards were in the name of Joe Ramirez and Jennifer Martinez. When asked to whom the cards belonged, appellant advised that the cards belonged to his girlfriend, Jennifer. However, appellant could not state a last name for Jennifer. Appellant then stated that he did not know to whom the card in the male's name belonged and that he had found the cards on the ground. At this point, Sims was still alone, so he decided to place handcuffs on appellant and place him in the back of Sims's patrol car.

Sims then requested verbal consent to search the bag and briefcase appellant was carrying. Appellant gave verbal consent. In the bag, Sims found checks belonging to Harold and Shirley Dron, a small envelope from Chase Bank with $25.00 inside, a tool that Sims opined was a window-breaking tool, a Walgreens bag with five unopened Copenhagen cans, an HTC phone charger, a wheel lock key, an air purifier, and loose change ($13.74 total).

Sims then gave appellant his *Miranda*[3] warnings. Appellant waived his *Miranda* rights and agreed to speak with Sims. Appellant gave a statement about finding a plastic bag with the two debit cards inside. Appellant said he went to the nearby Wal-Mart and used the change counter and was heading to the Coronado Inn when he was

---

[3] *See Miranda v. Arizona,* 384 U.S. 436, 471–72, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

detained. Sims attempted to find the owners of the debit cards and checkbook via the computer database of the LPD with no success. Sims then placed appellant under arrest and took him to the city holding facility.

Prior to conducting jury voir dire, the trial court held a hearing on appellant's motion to suppress Officer Sims's testimony. Sims testified to the events that culminated in the arrest of appellant. He testified that he cuffed appellant and placed him in the back of the patrol car for the following reasons: (1) Sims believed that a crime had occurred; (2) appellant was a suspect in that crime; (3) Sims had concerns for his own personal safety since he was still alone; and (4) Sims wanted to limit appellant's use of his hands so he would not be able to fight or flee. Sims further testified that he had not placed appellant under arrest at that time. The trial court overruled the motion to suppress as to Sims's testimony about finding the debit cards and the items in the black bag. The trial court did not file any findings of fact or conclusions of law.

During the trial before the jury, Sims again testified about the events that led up to the arrest of appellant. Also testifying was Detective Gerrardo Torres from the property crimes division of the police department. He testified that he could never find the people named on the debit cards. However, he was able to locate Shirley Dron, who owned the checkbook at issue. Dron advised Torres that she was missing her checkbook and a cash envelope from Chase Bank with $200 in it.

Shirley Dron testified that she was in Lubbock the first week in October visiting family. Further, Dron testified that she had stayed at the La Quinta hotel on Avenue Q in Lubbock. She did not find her checkbook missing until she returned to her home.

4

She testified that she did not know appellant and did not give him permission to have her checkbook.

After the evidence closed, the jury was properly charged and retired to consider its verdict. It found appellant guilty of the offense charged. Appellant having elected to have the trial court set punishment, the jury was discharged, and the court took up the issue of punishment.

After hearing the evidence regarding appellant's prior convictions, the trial court found that appellant had twice been convicted of prior felony offenses. Thereafter, the trial court sentenced appellant to confinement in the ID-TDCJ for 18 years. This appeal followed. Appellant contends that the trial court erred in denying his motion to suppress the testimony of Officer Sims because appellant was not given his *Miranda* warning prior to the request for permission to search his pockets and the black bag. Next, appellant contends that, had the testimony of Sims been suppressed, as allegedly required, the evidence was insufficient to prove the allegations against him. We disagree with appellant's contentions and will affirm.

Sims's Testimony[4]

Standard of Review

A trial court's denial of a motion to suppress is reviewed under a bifurcated review process. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). At the suppression hearing, the trial court is the sole judge of the credibility of the

---

[4] The procedural considerations and the relationship of the issues presented to this Court make it more logical to address the admission of Sims's testimony first although appellant's challenge to the sufficiency of the evidence would provide the greatest relief and, therefore, ordinarily would be addressed first. *See Pham v. State,* 463 S.W.3d 660, 667 n.3 (Tex. App.—Amarillo 2015, pet. ref'd).

witnesses and the weight to be given their testimony. *Ex parte Moore,* 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). As an appellate court, we review the record of the hearing on the motion in the light most favorable to the trial court's ruling and must sustain the ruling if it is reasonably supported by the record. *Id.* Where, as in this instance, there are no findings of fact concerning its ruling on a motion to suppress, we assume that the court made implicit findings that support its ruling, provided that those implied findings are supported by the record. *Id.* However, the ultimate legal conclusion of whether an individual was in custody requires an appellate court to take the facts, as assessed for weight and credibility by the trial court, and then make a legal determination as to whether those facts amount to custody under the law. *See State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013).

Analysis

We begin with the notation that appellant's argument is grounded upon the Fifth Amendment to the Constitution as interpreted by the *Miranda* opinion. *See* U.S. CONST. amend. V. The essence of appellant's complaint is that he was in custody but had not had his rights under *Miranda* read or explained to him. Therefore, under appellant's theory, nothing he said could be used and anything found was likewise prohibited from use.

This leads to two questions that the Court must answer. First, does the Fifth Amendment right against self-incrimination as enunciated by *Miranda* and its progeny apply where an accused voluntarily consents to a search? Second, if it does apply, was

appellant in custody for *Miranda* purposes at the time he agreed to allow Sims to search his pockets and the bag that he carried?

The United States Court of Appeals for the Fifth Circuit has provided insight into the first question in *United States v. Stevens*, 487 F.3d 232, 242–43 (5th Cir. 2007). In *Stevens*, the appellant had not been given his *Miranda* warnings prior to granting consent to search his home. *Id.* at 242. On appeal, Stevens contended that, because he had not been given the *Miranda* warnings prior to giving his consent, the evidence found as a result of the search should be suppressed. The court decided that the failure to give the *Miranda* warnings prior to consent being requested did not prohibit the use of the in-custody statements granting consent to search. *See id.* Further, the court stated, "[a] statement granting 'consent to a search is neither testimonial nor communicative in the Fifth Amendment sense.'" *Id.* Finally, the court pointed out that a statement of consent is more properly scrutinized under the Fourth Amendment and not the Fifth Amendment. *Id.* According to the court, this is so because under the Fifth Amendment the accused's statements, in and of themselves, present the potential for constitutional evil. *Id.* The Fourth Amendment prohibits an unreasonable search, and a search produces real and physical evidence, not self-incriminating evidence. *Id.* at 243 (quoting *United States v. Garcia*, 278 F.3d. 510, 514 (5th Cir. 1974)).

In the case before the Court, there is no allegation that the search was an unreasonable search. On the face of the testimony, it was a search that was consented to by appellant. Appellant cannot now change the nature of the voluntary search having decided not to attack the voluntariness of the search in the trial court.

7

Further, by the trial court's denial of the motion to suppress, it has impliedly found that appellant was not in custody at the time he consented to the search. Appellant argues that he was handcuffed when he gave the first consent, and he was handcuffed and in the back of the patrol car when he gave the second consent. Essentially, appellant argues that we must find that handcuffing and placing an accused in a patrol car is *ipso facto* an arrest for Fifth Amendment purposes.

When Sims initially encountered appellant, he found that appellant matched the description of someone who was thought to be burglarizing vehicles. This led Sims to decide to detain appellant while he investigated. Such a temporary detention is well within the parameters of *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Based on the totality of the facts presented to Sims, his initial detention of appellant was reasonable. *See Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002).

Following his initial detention, appellant was first handcuffed and then placed in the backseat of the patrol car. Appellant contends that, for purposes of the Fifth Amendment, appellant was clearly in custody at that time. The timeline in question actually had two components. First, appellant was detained, as we analyzed above, when he was asked to place his hands on the patrol car. Sims did a pat-down on appellant for weapons. Second, after Sims found the two debit cards in appellant's pocket and appellant gave inconsistent statements about how he acquired them, he was handcuffed and placed in the patrol car. According to the testimony of Sims, this was so he could continue the investigation without any fear for his personal safety.

Sims had testified that he was alone while he attempted to investigate the possible burglary of a vehicle. Sims did not convey to appellant that he was under arrest.

Handcuffing a suspect is not the same as placing an individual under arrest for purposes of the Fifth Amendment. *See State v. Ortiz*, 382 S.W.3d 367, 374 (Tex. Crim. App. 2012). It is just one of a range of several relevant factors in determining whether someone is in custody. *See id.* When we look at the actions of Sims after he placed appellant handcuffed in the back of the patrol car, we see actions aimed at completing his initial investigation. Specifically, Sims attempted to locate the owners of the two debit cards and the checkbook. He testified he did this through accessing the police database to determine whether any of these items had been reported stolen or to see if any of the names on the items would lead to a current address or phone number.

From Sims's perspective, he could have done this without the necessity of either handcuffing appellant or placing him in the back of the patrol car except for one detail: Sims was still alone at the scene with appellant. An officer has a right to maintain the status quo while continuing an investigation. *See Balentine*, 71 S.W.3d at 771. Further, the officer has a right to take reasonable steps to ensure his own safety. *See id.* The record supports the proposition impliedly found by the trial court, that is, that appellant was not in custody for purposes of *Miranda* until Sims advised appellant that he was under arrest.

Because we find that the consensual search of appellant's person and his bag were not statements for purposes of *Miranda* and because we find that appellant was

not in custody for purposes of *Miranda* until he was so advised by Sims, we overrule appellant's first issue.

## Sufficiency of the Evidence

We review challenges to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virgina*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), and *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010). That is, the evidence, when viewed in the light most favorable to the verdict, must be such that a rational factfinder could conclude that every element has been proved beyond a reasonable doubt. *See Brooks,* 323 S.W.3d at 917*.*

Appellant's argument is predicated on the position that Sims's testimony should be suppressed. Such an assumption is without merit as demonstrated above. When we review all of the evidence, we find that appellant, on the day in question, had the personal identifying data belonging to Shirley Dron, without her permission or consent. Accordingly, the evidence was sufficient to sustain the jury's finding of guilt. We overrule appellant's second issue.

## Conclusion

Having overruled appellant's issues, we affirm the judgment entered by the trial court.

Mackey K. Hancock
Justice


Do not publish.