**UNITED STATES of America,
Appellant,**

v.

**Gary MILLS, Defendant–Appellee.**

**Docket No. 04–0750–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 19, 2004.

Decided: June 21, 2005.

William J. Nardini, Assistant United States Attorney (Jeffrey A. Meyer, Karen L. Peck, Assistant United States Attorneys, of counsel; Kevin J. O'Connor, United States Attorney for the District of Connecticut, on the brief), United States Attorney's Office for the District of Connecticut, New Haven, CT, for Appellant.

Richard S. Cramer, Wethersfield, CT, for Defendant–Appellee.

Before: MESKILL, SACK, and B.D. PARKER, Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

Gary Mills, a convicted felon who was incarcerated on unrelated state charges, was suspected by New Haven police of illegally possessing a gun linked to the shooting of a police officer. One day after Mills was formally charged on a state gun offense, but before his arraignment, Mills agreed to be interviewed without counsel by detectives who were investigating the shooting. During the interview, Mills made statements linking himself to the gun. The government concedes for purposes of this appeal that this interview violated Mills's Sixth Amendment right to counsel with respect to the state charges. A number of months after the interview, Mills was also charged with unlawful gun possession under federal law. When federal prosecutors sought to introduce in federal proceedings the statements Mills had previously given to local police, he moved to suppress them, arguing, in part, that the statements had been taken in violation of his right to counsel. The District Court concluded that, because Mills's right to counsel had attached at the time of the interview, state officials had violated his Sixth Amendment rights. The Court then ordered the statements suppressed. The government now appeals, *see* 18 U.S.C § 3731, arguing that despite the identity of elements of the federal and state gun charges, they are not the same offense for purposes of the Sixth Amendment because they were prosecuted by separate sovereigns, and therefore Mills's Sixth Amendment right to counsel did not attach as to

the federal charge. Thus, the government contends, the statements ought not to be suppressed.

 We hold that the statements obtained in violation of Mills's right to counsel as to the state proceedings must also be suppressed in the federal proceedings because the two proceedings were for the "same offense," each requiring proof of identical essential elements. *See Texas v. Cobb,* 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under *Cobb,* the Sixth Amendment right of counsel extends to offenses considered to be the "same offense" as those to which the right has already attached even when they are prosecuted by different sovereigns. Accordingly, we affirm.

## BACKGROUND

We draw the pertinent facts from the opinion of the District Court. *United States v. Mills,* No. 3:03–cr–0032, slip op. at 8 (D.Conn. Oct. 1, 2003) (*"Mills I "*). On June 13, 2002, New Haven police officer Robert Fumiatti was shot. A gun was found near the scene of the shooting, and an investigation into the provenance of the gun linked it to Mills. Four days later, state officials filed an. Information charging Mills with multiple firearms violations, including criminal possession of a firearm by a convicted felon, carrying a pistol without a permit and illegal transfer of a firearm. Conn. Gen.Stat. §§ 29–35, 29–37j, 53a–217. That same day, the police obtained a warrant for Mills's arrest. The application for the warrant tied Mills to the gun through statements made by Michael Rice, the registered owner of the gun used in the shooting. For several months before the shooting, Mills had been confined in a state correctional facility on unrelated charges.

On June 18, Detectives Francis Murphy and Steven Coppola of the New Haven Police Department interviewed Mills. Mills signed a statement that read: "This is to indicate my willingness and desire to be interviewed by Det. Coppola of New Haven PD. I understand that I may refuse to be interviewed and/or photographed by the above party/ies, but choose of my own will, to be interviewed and/or photographed." At the time of the interview, Mills had a court-appointed attorney for the charges for which he was incarcerated, but Mills did not ask to consult that attorney and the attorney was not contacted.

The parties dispute what happened next. Detective Coppola testified that he and Detective Murphy told Mills that they were investigating a police shooting and had reason to believe that the gun used in the shooting had passed through his hands. Detective Coppola also testified that he recited *Miranda* warnings to Mills, gave Mills a waiver he refused to sign, and asked him if he was willing to be tape recorded during the interview, which Mills refused.

Mills denies that most of this took place, but he did remember refusing to have the interview tape recorded. Furthermore, although Mills acknowledged that the detectives mentioned a police shooting, he claimed that they made those comments only at the end of the interview. While Mills testified that he was told by the detectives that he was not a suspect, Detective Coppola does not recall that either he or Detective Murphy made such a statement.

During the interview, Mills was asked several questions about Rice. When Mills was shown a photo board and asked to identify any individuals he knew, he identified several, including Rice. Detective Murphy put his initials by Rice's picture

on the board, but Mills refused to put his initials there. Mills acknowledged that he knew Rice and discussed some past interactions he had had with Rice. The detectives also asked Mills if he had ever received guns from Rice, which Mills denied doing. The next day, Mills was arraigned in state court on the Information.

Eight months later, on February 18, 2003, a federal grand jury indicted Mills for unlawful possession of a firearm by a convicted felon. *See* 18 U.S.C. § 922(g)(1). The government concedes that "[e]xcept for the requirement that the gun have previously traveled in interstate commerce, a federal charge under 18 U.S.C. § 922(g)(1) has the same factual elements as a state charge under Conn. Gen.Stat. § 53a–217(a)(1) for criminal possession of a firearm by a convicted felon." Appellant's Br. at 8 n.4. In due course, Mills moved to suppress the statements he made to local police officers during the June 18 interview on three grounds: (1) he was subjected to custodial interrogation and had not been advised of his *Miranda* rights; (2) his statements were involuntary because he was tricked by the interviewing police detectives; and (3) his statements were taken in violation of his Sixth Amendment right to counsel.

Following an evidentiary hearing, the District Court rejected the first two grounds but concluded that Mills's right to counsel had attached because an Information had already been issued at the time of the interview and that the interview should not have occurred in the absence of counsel. *Mills I*, at 8, 10, 14–15. Accordingly, the District Court ordered the statements suppressed. *Mills I*, at 14–15. The District Court denied a motion for reconsideration, in which the government repeated its argument that the right to counsel had not attached at the time of the interview and argued for the first time that dual sovereignty under the Sixth Amendment precluded a finding that the right to counsel had attached as to the federal offense. *United States v. Mills*, No. 3:03–cr–00032, 2004 WL 57282, 2004 U.S. Dist. LEXIS 291 (D.Conn. Jan. 9, 2004) ("*Mills II* ").

For the purposes of this appeal, the government does not challenge the District Court's determination that the police officers violated Mills's right to counsel as to the state charges. The issue on this appeal is whether statements taken by local police, in violation of a defendant's right to counsel as to previously charged state offenses but prior to the filing of federal charges for the same crime, can be admitted in the federal prosecution. We hold that they cannot.

## DISCUSSION

■ On appeals from motions to suppress, we review findings of fact for clear error and questions of law *de novo*. *See United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir.2004), *cert. denied*, —— U.S. ——, 125 S.Ct. 1878, 161 L.Ed.2d 751 (2005); *United States v. Smith*, 9 F.3d 1007, 1011 (2d Cir.1993).

■ The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of indictment or information. *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Furthermore, the Sixth Amendment right "is offense specific" which means that it cannot be invoked once for all future prosecutions. *Id.*

■ The government argues that under *Texas v. Cobb*, the state and the federal charges are not the same offense for Sixth Amendment purposes. *Cobb* held that the Sixth Amendment right to counsel does not extend to uncharged crimes unless they are the "same offense" as the charged crime.[1] 532 U.S. at 173, 121 S.Ct. 1335. In *Cobb*, the defendant confessed to a home burglary but denied knowledge of a woman and child's disappearance from the home. *Id.* at 165, 121 S.Ct. 1335. He was indicted for the burglary, and counsel was appointed to represent him. *Id.* Over a year later, Cobb's father reported to investigating officers that Cobb had confessed to him that he had killed the woman and child during the burglary. *Id.* After being arrested based on this information and taken into custody, Cobb waived his *Miranda* rights, confessed to the murders and, at trial, was convicted of capital murder. *Id.* at 165–66, 121 S.Ct. 1335. On appeal to the Texas Court of Criminal Appeals, Cobb argued that his confession should have been suppressed because it had been obtained in violation of his Sixth Amendment right, which, he claimed, attached when counsel was appointed in the burglary case. *Id.* at 166, 121 S.Ct. 1335.

The Supreme Court held that the Sixth Amendment did not bar the police from interrogating Cobb regarding the murders because, when he confessed to them, he had only been indicted for the burglary and, under Texas law, burglary and capital murder are not the same offense. *Id.* at 174, 121 S.Ct. 1335. The Court reasoned that when the right to counsel attaches, it encompasses offenses that, even if not for-

mally charged, would be considered the same under the test articulated by *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which has been applied to define what is a "same offense" for double jeopardy purposes. *Cobb*, 532 U.S. at 173, 121 S.Ct. 1335. Under *Blockburger*, " 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " *Cobb*, 532 U.S. at 173, 121 S.Ct. 1335 (quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180). If the answer is no, we consider the two offenses the same, and the Fifth Amendment's Double Jeopardy Clause would bar their multiple or successive prosecutions. *See Brown v. Ohio*, 432 U.S. 161, 164–166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). If the answer is yes, the offenses are distinct, and there is no double jeopardy bar. Reasoning that the text of the Sixth Amendment confines its scope to "all criminal prosecutions," *Cobb* held that the Sixth Amendment right to counsel is prosecution specific. 532 U.S. at 173 n. 3, 121 S.Ct. 1335. In other words, it applies to charged offenses as well as offenses that, under *Blockburger*, could not be the subject of a later prosecution due to the double jeopardy bar. *Id. Cobb* held that there is "no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel." *Id.* at 173, 121 S.Ct. 1335.

The government argues that because *Cobb* equates "offense" in the Sixth

---

1. Prior to *Cobb*, some lower courts had held that the right to counsel attached to uncharged crimes that were "factually related" to a specifically charged offense. *See United States v. Covarrubias*, 179 F.3d 1219, 1223–24 (9th Cir.1999); *United States v. Melgar*, 139 F.3d 1005, 1013 (4th Cir.1998); *United States*

*v. Doherty*, 126 F.3d 769, 776 (6th Cir.1997); *United States v. Arnold*, 106 F.3d 37, 41–42 (3rd Cir.1997); *United States v. Williams*, 993 F.2d 451, 457 (5th Cir.1993). *Cobb* rejected this approach. 532 U.S. at 167–68, 121 S.Ct. 1335.

Amendment context with its meaning in the double jeopardy context, the dual sovereignty doctrine usually applied to double jeopardy analysis also applies to the Sixth Amendment. The government further contends that, in determining when the Sixth Amendment right to counsel attaches, offenses are not the "same offense" even when *Blockburger* is satisfied if they are prosecuted by different sovereigns. Under the dual sovereignty doctrine, the federal prosecution in this case would not have been barred by a prior state prosecution. *See generally Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (holding that a federal prosecution is not barred by a prior state prosecution of the same person for the same acts); *cf. Bartkus v. Illinois*, 359 U.S. 121, 123–24, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (suggesting that there may be an exception to the dual sovereignty doctrine when a state brings its prosecution as merely a tool of the federal authorities, who thereby avoid the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal.). Consequently, according to the government, Mills's Sixth Amendment right, which had attached when he was indicted on state weapons charges, had not attached to his federal prosecution.

We reject the government's proposed approach. *Cobb* recently, and in our view definitively, set forth the controlling test. Nowhere in *Cobb*, either explicitly or by imputation, is there support for a dual sovereignty exception to its holding that when the Sixth Amendment right to coun-

sel attaches, it extends to offenses not yet charged that would be considered the same offense under *Blockburger*. *Cobb* makes clear that Sixth Amendment violations are offense specific and, consequently, evidence obtained in violation of the Sixth Amendment is not admissible in subsequent prosecutions for the "same offense" as defined by *Blockburger*. The fact that *Cobb* appropriates the *Blockburger* test, applied initially in the double jeopardy context, does not demonstrate that *Cobb* incorporates the dual sovereignty doctrine: The test is used simply to define identity of offenses. Where, as here, the same conduct supports a federal or a state prosecution, a dual sovereignty exception would permit one sovereign to question a defendant whose right to counsel had attached, to do so in the absence of counsel and then to share the information with the other sovereign without fear of suppression. We easily conclude that *Cobb* was intended to prevent such a result.[2] *See United States v. Red Bird*, 287 F.3d 709, 715 (8th Cir.2002) (holding that *Cobb* does not require that the dual sovereignty doctrine be extended to the definition of an offense in the Sixth Amendment context); *cf. Elkins v. United States*, 364 U.S. 206, 208, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (holding that "articles obtained as the result of an unreasonable search and seizure by state officers, without involvement of federal officers" may not "be introduced in evidence against a defendant over his timely objection in a federal criminal trial").

---

**2.** We reject the government's invitation to follow the Fifth Circuit's lead in *United States v. Avants*, 278 F.3d 510 (5th Cir.2002), *cert. denied*, 536 U.S. 968, 122 S.Ct. 2683, 153 L.Ed.2d 854 (2002). In that case, the court, applying a dual sovereignty analysis, held that federal and state murder prosecutions, although identical in their respective elements, are separate offenses for Sixth Amendment purposes. *Id.* at 518. Furthermore, *Avants* is readily distinguishable because the relevant statements were made to FBI agents who were investigating a crime unrelated to the murder for which the defendant was initially prosecuted by the state and later prosecuted by the federal government.

## CONCLUSION

For the foregoing reasons, the Order of the District Court suppressing the defendant's statements is AFFIRMED.