[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 8, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15714
Non-Argument Calendar

_____

D. C. Docket No. 07-60149-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICKY JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 8, 2008)**

Before BIRCH, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Ricky Jackson appeals his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). On appeal, Jackson argues that the district court erred in denying his motion to suppress statements made by Jackson to federal agents, because his Sixth Amendment right to counsel had attached in a state proceeding for the same offense, and, therefore, the federal agents violated his Sixth Amendment rights when they questioned him at length. We conclude that Jackson's right to counsel had not attached in the federal case against him when he made incriminating statements to federal authorities, thus his Sixth Amendment right to counsel was not violated. Moreover, Jackson had initiated that conversation with federal agents. Thus, the district court did not err when it denied Jackson's motion to suppress those statements. Accordingly, we AFFIRM.

## I. BACKGROUND

Jackson was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Jackson filed a pre-trial motion to suppress physical evidence seized on 3 April 2007 and 21 June 2007, as well as statements that he made to law enforcement officers on 3 April 2007, 1 June 2007 and 21 June 2007, and also requested an evidentiary hearing. Jackson argued in his motion that his statements made to federal agents on 1 June 2007 during the

canvassing of his neighborhood and after his arrest on federal charges on 21 June 2007 are inadmissible, since they were made after his Sixth Amendment right to counsel had attached in a state case based upon the same offense. Jackson also raised arguments concerning the admissibility of evidence seized and statements made to Florida state police officers on 3 April 2007, which are not raised on appeal.

At the evidentiary hearing before a magistrate judge concerning Jackson's motion to suppress, Florida Police Officer Aaron Burk testified that on 3 April 2007 he went to the area of Jackson's residence in response to a 911 call concerning a gun being fired outside of a residence. Officer Burk testified that Jackson flagged him down, and following a conversation concerning a .38 that Jackson said he had shot in the air, Jackson was placed in handcuffs and advised of his Miranda[1] rights, which Jackson waived. The officer said Jackson consented to a search with Jackson of his residence for injured persons, during which the officer saw the grip of a shotgun protruding from underneath the bedsheets. A background check by the officer revealed Jackson was a convicted felon. Jackson went to state court the day after the shooting, was appointed counsel to represent him in the pending state matter on 16 May 2007, and the state charges were not

---

[1]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

dismissed until 29 June 2007.

Federal Special Agent DeVito testified that, during her investigation of Jackson for the Bureau of Alcohol , Tobacco, Firearms and Explosives ("ATF") for a firearms violation by a felon, she went to Jackson's neighborhood on 1 June 2007 to canvas the neighbors concerning the shooting described above, without intending to contact the defendant. Agent DeVito testified that, while she was speaking to the neighbor who lived directly across from Jackson, Jackson exited his residence and approached the group. She testified that she did not call him over to them, and when he was a few feet away she asked him whether he was Ricky Jackson, which he confirmed. Agent DeVito identified herself as an agent with the ATF and told him they were in the neighborhood to find out if anyone had witnessed what happened April 3rd regarding a shooting in his backyard, to which he replied "oh, you mean, when I shot in my backyard?" R3 at 51-52. Agent DeVito testified that he admitted to shooting a shotgun into the air, hiding the gun completely under his bedspread, speaking to police officers that arrived on the scene, and allowing them to go into his house to look for injured people, after he had initially refused saying they needed a search warrant to go in the house. He also told her that the police officers found the gun during the walk-through. She did not take him into custody during this conversation, which primarily took place

4

in front of his residence. Jackson invited the federal agents into his backyard and residence to show them how and where the events of April 3rd had occurred. Agent DeVito testified that (1) she did not ask him whether he had a lawyer, (2) call his lawyer, or (3) advise him he had the right to have a lawyer present while she questioned him, and it did not occur to her that he may have a lawyer until after she left his residence, although she was aware there was a state proceeding going on against him.

Agent DeVito also testified concerning the arrest of Ricky Jackson on federal charges on 21 June 2007, stating that, after he was taken into custody by the ATF, he was advised of his rights, which he waived by signing a form. Agent DeVito testified that, following the execution of the form, Jackson did not indicate that he no longer wished to speak with police. She testified that, while Jackson was in custody, he discussed in more detail the events on the night of the shooting, describing how he shot his shotgun into the air once to scare loiterers away, that he made up the story he told to the Florida police officers about having a .38, how he agreed to allow the police officers to go into his house to look for injured people, and that he also saw a portion of the shotgun sticking out of the bedspread when he went through the house with the police officer. She testified that Jackson told the federal agents about two boxes of ammunition he had purchased and signed a form

consenting to the search of his residence for the ammunition, which federal agents retrieved from his residence.

Jackson testified that when Agent DeVito visited his neighborhood on 1 June 2007, he walked over to Agent DeVito to get a closer look at her. He said that, when he walked over to Agent DeVito, she asked him whether he minded answering a few questions, and he said he would answer any question she wanted. When Jackson was asked about signing the waiver form given to him by federal agents on 21 June 2007, Jackson testified that he would do anything with her, and that, yes, he signed the form.

At the hearing Jackson, through counsel, argued that the statements he made to federal agents must be suppressed, since the federal and state charges were identical and concerned the same offense, his right to counsel attached to the offense and the federal agent knew or should have known that he was already represented by counsel for this offense. Jackson also argued that it was not sufficient to "Mirandize" him on 21 June 2007, since he was represented by counsel, and they should have specifically discussed the fact he had a lawyer and ask him whether he wanted that lawyer present. Id. at 131-132. In a "Notice of Supplemental Authority in Support of Motion to Suppress," which was filed after the evidentiary hearing, Jackson noted that the Supreme Court held in Texas v.

6

Cobb, 532 U.S. 162, 172-173, 121 S. Ct. 1335, 1343 (2001), that the Sixth Amendment right to counsel attaches to offenses that, even if not formally charged, would be considered the same offense under Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).

The magistrate issued a report and recommendation ("R&R"), recommending, among other matters, the denial of Jackson's motion to suppress his statements to federal agents on 1 June 2007 and 21 June 2007, since Jackson's right to counsel had attached only in connection with the state charges and Jackson had initiated the June 1 conversation with the federal agents. Jackson objected to the magistrate judge's findings, arguing that at the time he was questioned by federal agents his right to counsel had attached in connection with the state and federal charges, since both charges had essentially the same elements. The government responded, urging the application of dual sovereignty to the Sixth Amendment right to counsel issue.

The district court adopted the R&R and denied Jackson's motion to suppress, since his right to counsel had only attached in the state case. Jackson pled guilty in the federal case to possession of a firearm by a convicted felon, reserved the right to appeal the adverse determination of his Motion to Suppress, and was sentenced to 180 months of imprisonment.

## II. DISCUSSION

On appeal, Jackson argues that the district court erred in denying his motion to suppress statements made by Jackson to federal agents, since his Sixth Amendment right to counsel had attached in a state proceeding for the same offense; therefore, the federal agents violated his Sixth Amendment rights when they questioned him at length about the same offense. Jackson notes that the Second Circuit held that "[n]owhere in Cobb, either explicitly or by imputation, is there support for a dual sovereignty exception to its holding that when the Sixth Amendment right to counsel attaches, it extends to offenses not yet charged that would be considered the same offense under Blockberger," United States v. Mills, 412 F.3d 325, 330 (2d Cir. 2005). Jackson recognizes that his position is barred by our holding in U.S. v. Burgest, 519 F.3d 1307, 1310 (11th Cir. 2008); however, he raises it on appeal in order to preserve it for further review by the Supreme Court.

When considering a district court's denial of a motion to suppress, we review its findings of fact for clear error and its application of the law to those facts de novo. United States v. Newsome, 475 F.3d 1221, 1223 (11th Cir.) (per curiam), cert. denied, 128 S. Ct. 218 (2007). We construe all facts in the light most favorable to the prevailing party, in this case, the government. Id. at 1223-24. Any evidence obtained by unconstitutional searches and seizures is inadmissible. Mapp

8

v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691 (1961). Although the doctrine initially was applied in the context of the Fourth Amendment, it also applies to evidence seized in contravention of the Fifth and Sixth Amendments. United States v. Terzado-Madruga, 897 F.2d 1099, 1113 (11th Cir. 1990).

"The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.'" See McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S. Ct. 2204, 2207 (1991) (quoting U.S. Const. amend. VI). The Sixth Amendment right to counsel "is offense specific." McNeil, 501 U.S. at 175, 111 S. Ct. at 2207. "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Id. (quotations and citations omitted). "Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." Id. at 176, 111 S. Ct. at 2208 (quotations and citations omitted). "[W]here conduct violates laws of separate sovereigns, the offenses are distinct for purposes of the Sixth Amendment right to counsel." United States v. Burgest, 519 F.3d 1307, 1310 (11th Cir. 2008) (holding that questioning by federal agents did

not violate the defendant's <u>Miranda</u> rights, because, at the time of the questioning, he had only been charged under state law, not federal law).  In <u>Burgest</u>, we adopted the First Circuit's reasoning in <u>United States v. Coker</u>, 433 F.3d 39, 44 (1st Cir. 2005):

> [a]fter carefully examining <u>Cobb</u>, we conclude that the dual sovereignty doctrine applies for the purposes of defining what constitutes the same offense in the Sixth Amendment right to counsel context.  In doing so, we reject the reasoning of the Second Circuit in <u>Mills</u> and adopt the reasoning of the Fifth Circuit in <u>Avants</u>.   The court in <u>Mills</u> stated that "[n]owhere in <u>Cobb</u>, either explicitly or by imputation, is there support for a dual sovereignty exception" in the Sixth Amendment right to counsel context.  <u>Mills</u>, 412 F.3d at 330. This statement, in our view, does not give adequate consideration to the Court's statement that it saw "no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel."  <u>Cobb</u>, 532 U.S. at 173, 121 S. Ct. 1335, 149 L.Ed.2d 321.  If the Court intended to incorporate only the <u>Blockburger</u> test into its Sixth Amendment jurisprudence, then its statement in <u>Cobb</u> would make no sense, as there would be a difference in the meaning of the term "offense" in the contexts of double jeopardy and of the right to counsel.

519 F.3d at 1310.  In a later case, we cited <u>Burgest</u> in holding that the defendant's statements to federal agents, after he had been assigned an attorney for state charges, need not be suppressed, since under <u>Burgest</u> the dual sovereignty doctrine applied; therefore, his Sixth Amendment counsel rights had not been violated. <u>United States v. Harris</u>,  526 F.3d 1334, 1340 (11th Cir. 2008) (per curiam).

In the absence of questioning by law enforcement, the we have held that

"[v]oluntary and spontaneous comments by the accused, even after Miranda rights are asserted, are admissible evidence." Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991). Further, "[i]ncriminating statements made in the course of casual conversation are not products of a custodial interrogation." United States v. Satterfield, 743 F.2d 827, 849 (11th Cir. 1984). We will consider a communication initiated by the accused where the accused's agent approaches the police. See United States v. Gonzalez, 183 F.3d 1315, 1324 (11th Cir. 1999) (finding no Sixth Amendment violation), overruled on other grounds, United States v. Diaz, 248 F.3d 1065, 1107 (11th Cir. 1999).

In this case, it is undisputed that Jackson's Sixth Amendment right to counsel attached to the state court proceeding for the felon-in-possession of a firearm charge at the time the federal agents interviewed him on 1 June 2007 and 21 June 2007; however, Jackson's prior right to counsel for the charged state offense did not attach to Jackson's uncharged federal felon-in-possession of a firearm charge, since the federal offense was separate from the state offense under the dual sovereignty doctrine, which Burgest held applies in the Sixth Amendment context. 519 F.3d at 1310. Consequently, the district court did not err when it admitted (1) Jackson's statements to Agent DeVito on 1 June 2007, (2) his statements to federal agents on 21 June 2007, and (3) the ammunition federal

11

agents seized from his home, since Jackson's Sixth Amendment rights had not yet attached to the federal offense the agents were investigating.

Assuming, arguendo, that we were to conclude that the district court erred in finding that Jackson's Sixth Amendment right to counsel had not attached to the federal offense, we would hold that the district court did not err in denying Jackson's motion to suppress his incriminating statements to Agent Devito on 1 June 2007, since his statements were otherwise admissible. Jackson's statements to Agent Devito on 1 June 2007 may be considered under our ruling in Gonzalez, since Jackson, on his own initiative, approached Agent Devito, who identified herself as a federal agent. 183 F.3d at 1324. His voluntary and spontaneous incriminating statements during that conversation are admissible under Cannady. 931 F.2d at 754. Additionally, since this conversation was not the product of a custodial interrogation—during the entire conversation he was free to leave and at no time did he indicate he wished to end the conversation – the incriminating statements he made during that conversation are admissible under Satterfield. 743 F.2d at 849.

Finally, even if we were to conclude that the district erred in denying Jackson's motion to suppress his incriminating statements, the error was harmless beyond a reasonable doubt. See United States v. Turner, 871 F.2d 1574, 1581-82

12

(11th Cir.1989). In light of the record, even in the absence of his statements to federal agents, the evidence against Jackson would have been sufficient to support his conviction. Jackson does not challenge on appeal that a Florida police officer found a shotgun in plain view in Jackson's apartment during a voluntary search of his apartment and a record check established that Jackson was a felon. Thus, because the record demonstrates that the evidence of guilt was overwhelming, any error in admitting Jackson's statements to federal agents was harmless.

## III. CONCLUSION

For the reasons stated above, we hold that the district court did not err when it denied Jackson's motion to suppress incriminating statements that he made to federal agents. Accordingly, we **AFFIRM.**