06-3129-cr
United States v. Worjloh

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

_____

August Term, 2007

(Argued:  February 11, 2008                                    Decided: October 8, 2008)

Docket No. 06-3129-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

– v. –

GEHABAE WORJLOH,

*Defendant-Appellant*.

_____

Before: B.D. PARKER, RAGGI, AND HALL, *Circuit Judges*.

Appeal from a judgment of conviction and sentence in the United States District Court for the Eastern District of New York (Garaufis, *J.*) for conspiring to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, possessing with intent to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and illegally possessing a firearm in violation of 18 U.S.C. § 924(c)(1).  Judgment of conviction is AFFIRMED and sentence is VACATED and REMANDED.

SALLY BUTLER, Bayside, N.Y., *for Defendant-Appellant*.

CHRISTINA DUGGER, Assistant U.S. Attorney (Emily Berger, *on the brief*), *for* Benton J. Campbell, U.S. Attorney, Eastern District of New York, Brooklyn, N.Y., *for Appellee*.

PER CURIAM:

Gehabae Worjloh appeals from a judgment of conviction entered on July 7, 2006 in the United States District Court for the Eastern District of New York (Garaufis, *J.*). Worjloh was convicted following a jury trial of one count of conspiring to distribute and possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, one count of possession with intent to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and one count of possessing a firearm in relation to the charged conspiracy in violation of 18 U.S.C. § 924(c)(1). Worjloh was sentenced principally to 360 months' imprisonment. On appeal, he contends that various evidentiary rulings of the district court were in error, the district court provided an improper jury instruction, and that his sentence was unreasonable. We find that his contentions have no merit and affirm the judgment of the district court. However, we will vacate Worjloh's sentence and remand for re-sentencing in light of *United States v. Regalado*, 518 F.3d 143 (2d Cir. 2008).

## BACKGROUND

At trial, the government established that on March 29, 2002, New York City Police Department ("NYPD") officers executed a search warrant for 530 Hegeman Avenue in Brooklyn, New York. Police officers found a New York state identification card linking Worjloh to an apartment unit where narcotics, narcotics paraphernalia – – including drug packaging materials, a

9 mm handgun, and 9 mm ammunition were recovered. He was arrested outside of the building shortly thereafter. After Worjloh requested that an item of jewelry be retrieved from his vehicle, police officers discovered another 9 mm handgun behind the driver's seat in the vehicle. Worjloh was indicted on state charges including criminal possession of a controlled substance, criminal possession of a weapon, and criminally using drug paraphernalia. He made no statements to police officers about his arrest.

The government maintained that in 2001, several federal law enforcement agencies began jointly investigating a narcotics distribution organization that sold cocaine and crack cocaine in the East New York section of Brooklyn. Federal agents determined that Worjloh, his co-conspirator Adrian Payne, and various other individuals, sold crack cocaine from Worjloh's home at 530 Hegeman Avenue in Apartment 2F. On January 29, 2003, federal agents executed a warrant for his residence and recovered several bags of crack cocaine, a .22 caliber handgun, and a silencer. Worjloh was arrested on site and interviewed by federal agents. Worjloh contends that during questioning, his request for his attorney was denied. Following that request, he made several inculpatory statements which were introduced at trial about his crack cocaine distribution activities. Shortly thereafter, state authorities dismissed his pending state charges and a federal indictment was returned which, according to Worjloh, contained "offenses arising out of the evidence recovered during the 2002 New York State search warrant, the warrantless search of the appellant's vehicle and the 2003 federal search warrant."

At trial, the government introduced physical evidence from the two searches, as well as photographs, and telephone records. In addition, NYPD detectives and cooperating witnesses testified regarding Worjloh's participation in the narcotics conspiracy as well as his extensive

3

relationship in narcotics distribution with Adrian Payne. During the defense case, Worjloh testified that he had not sold drugs and only had a social relationship with Adrian Payne. Moreover, he claimed that he had not been present in Brooklyn immediately prior to the 2002 search, despite testimony to the contrary by the government's witnesses. The jury convicted Worjloh on all counts. He was sentenced to 300 months on the two drugs counts – – conspiring to distribute 50 grams or more of cocaine base and possessing with intent to distribute 5 grams or more of cocaine base to run consecutive with a sentence of 60 months on the count charging possessing a firearm in relation to the conspiracy.

Worjloh filed several pre-trial suppression motions that are at issue on this appeal. In those motions, he sought to suppress items recovered during the 2002 search by NYPD officers, claiming that a gun taken from his vehicle was the fruit of a warrantless search and that his January 2003 post-arrest statements at the police station violated the Fifth and Sixth Amendments because he was questioned by officers without the assistance of counsel. He also argued that the 2002 search warrant relied on false statements and stale information. The district court denied all of his pre-trial motions without an evidentiary hearing, as well as his subsequent motion to reconsider. Post-trial, Worjloh requested a *Franks* hearing claiming that the affiant in support of the state search warrant provided false testimony, and filed new motions to suppress evidence recovered during the 2002 search of his home and vehicle, as well as his post-arrest statements. The court denied his post-trial motions without a hearing.

**DISCUSSION**

4

Worjloh now brings several claims related to his prior evidentiary motions. He also contends that the district court improperly instructed the jury and engaged in judicial fact-finding.

**I.       Motions to Suppress**

When reviewing a district court's ruling on a motion to suppress evidence, we review the court's factual findings for clear error, viewing the evidence in the light most favorable to the government. The district court's legal conclusions are reviewed *de novo*. *See United States v. Rodriguez*, 356 F.3d 254, 257 (2d Cir. 2004). As an initial matter, Worjloh argues the district court erred in denying his motions to suppress inculpatory statements which, he avers, were obtained in violation of his Fifth and Sixth Amendment rights to counsel. We are not persuaded. Worjloh's claim with respect to his Fifth Amendment right to counsel is without merit as he waived that right when he reinitiated the conversation with the federal agents after having requested counsel. *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). With respect to his Sixth Amendment claim, we recognize that voluntarily reinitiating conversation with the agents under these circumstances would be insufficient to waive any Sixth Amendment rights, *see Michigan v. Jackson*, 475 U.S. 625, 636 (1986), if those Sixth Amendment rights had attached at the time of interrogation. However, because no federal charges had been brought against Worjloh at the time that he was questioned by federal officials, no Sixth Amendment right to counsel had attached as to the then uncharged federal conduct. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).

Worjloh relies on our holding in *United States v. Mills*, 412 F.3d 325 (2d Cir. 2005), to support his claim that his statements made in the course of the federal investigation must be suppressed because, in connection with the pending state investigation, his Sixth Amendment

5

rights had attached and he was represented by counsel. In fact, *Mills* does not reach that far. In *Mills*, we noted the government's concession that the state's interrogation of the defendant had violated the Sixth Amendment with respect to the pending state charges. *Id*. at 326. We ruled that the information obtained by state officials was not admissible in the subsequent federal prosecution because "Sixth Amendment violations are offense specific and, consequently, *evidence obtained in violation of the Sixth Amendment* is not admissible in subsequent prosecutions for the 'same offense.'" *Id.* at 330 (emphasis added). Moreover, in *Mills*, the federal indictment occurred as a result of the state arrest and interrogation as illustrated by the government's submission of federal firearms charges virtually identical to the pending state firearm charges.

Here, federal prosecutors did not seek to offer any evidence obtained by state officials in violation of the Sixth Amendment. Instead, they sought only to introduce statements made in the course of the federal interrogation, an interrogation that was unquestionably independent of the state arrest and investigation. Thus, the facts underlying our determination in *Mills* are not present here. *See id.* at 328 (noting that "[t]he issue on this appeal is whether statements taken by local police, *in violation of a defendant's right to counsel as to previously charged state offenses but prior to the filing of federal charges for the same crime*, can be admitted in the federal prosecution" (emphasis added)). Although Worjloh's state charges were pending at the time that he was interrogated by the federal agents, any Sixth Amendment rights related to the state offenses would not serve to restrict the ongoing investigation into uncharged federal crimes where, as here, that investigation is not tied to the state's conduct. Consequently, because the federal interrogation was not conducted in violation of the Sixth Amendment and the questioning

6

of Worjloh at issue was done exclusively by federal agents, there is no need to consider whether the state and federal prosecutions arose from the "same offense."[1] *See Mills*, 412 F.3d at 330.

We now make clear that *Mills*' holding is limited to situations in which federal prosecutors seek to admit evidence obtained by state and local prosecutors in violation of the Sixth Amendment. This is particularly troublesome where, as in *Mills*, federal agents rely on investigations conducted by state officials to pursue a federal prosecution. In the instant case, there is no suggestion that Worjloh's case was simply handed off from one sovereign to another. Accordingly, we rely on the Fifth Circuit decision in *United States v. Avants*, language that we found distinguishable in *Mills*, that because "the Supreme Court has incorporated double jeopardy analysis, including the dual sovereignty doctrine, into its Sixth Amendment jurisprudence," the pending state prosecution against Worjloh had no Sixth Amendment effect on the questioning related to uncharged federal conduct. 278 F.3d 510, 517 (5th Cir. 2002); *see also United States v. Coker*, 433 F.3d 39, 44 (1st Cir. 2005).

We also find no abuse of discretion in the district court's decision to deny a suppression hearing on the grounds that Worjloh's moving papers were not "sufficiently definite, specific, detailed, and nonconjectural," *see United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992), to enable the court to conclude that contested issues of fact existed as to whether Worjloh's initiation of conversation with the federal agents was, as the district court stated, "anything but voluntary."

---

[1] We do note that the federal crimes charged involved illicit activity engaged in by Worjloh that was in part the subject of the original state charges and in part occurred, or continued to occur, after the state charges had been filed.

Worjloh also maintains that the district court improperly refused to suppress evidence seized during a search of his home because the affidavit submitted in support of the application for the warrant contained false statements. Additionally, he argues that the officers conducting the search knowingly and improperly continued the search after they realized that the warrant's description of the premises was deficient. We disagree. The confidential informant told the state judge who signed the warrant that the building was a one-family brick house and that drugs were sold throughout the building. The warrant authorized a search of all of the floors in the home. The district court correctly found that in connection with his suppression motion, Worjloh had not provided sufficient information showing that the affiant intentionally provided inaccurate information. *See Franks v. Delaware*, 438 U.S. 154, 155 (1978). The district court also correctly found that Worjloh did not demonstrate that the affiant knowingly misled the Judge or that the warrant was "so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992). Finally, the district court did not err in concluding that subsequent submissions did not undermine its previous determination. Although Worjloh asserts that it must have become clear to the officers upon entering the building that it was not, in fact, being used as a single-family home, we identify no error in the district court's rejection of this argument as unsupported by the record evidence proffered at the time Worjloh filed his suppression motion.

## II. Jury Instruction

Next, Worjloh contends that the district court's jury instruction regarding his testimony deprived him of a fair trial. The court stated:

8

Obviously, the defendant has a deep personal interest in the result of the prosecution; indeed, it is fair to say that he has the greatest interest in its outcome. Interest creates a motive for false testimony and a defendant's interest in the result of his trial is of a character possessed by no other witness. In appraising the defendant's credibility, you may take that fact into consideration. However, I want to say this with equal force to you – – it by no means follows that simply because a person has a vital interest in the end result that he is not capable of telling a truthful and straightforward story.

Following Worjloh's conviction, we held in *United States v. Gaines* that this language impermissibly burdened a defendant's right to remain silent. 457 F.3d 238, 246-47 (2d Cir. 2006). Because Worjloh did not object to the jury instruction, his claim is reviewed for plain error. *See* Fed. R. Crim. P. 52(b).

In order for an alleged error to be noticed under Rule 52(b), that error must (1) be actual error; (2) be plain, which is synonymous with clear or obvious under current law; and (3) affect substantial rights. "Upon concluding that an error occurred which is plain and affects substantial rights . . . an appellate court [may] exercise its discretion to correct such error only 'if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Gonzalez*, 110 F.3d 936, 946 (2d Cir. 1997) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

As an initial matter, we assume that the district court plainly erred in giving these instructions in light of *Gaines*. However, Worjloh has not met the requirements of the third prong of the plain error test. The instruction did not implicate his substantial rights. "[W]here the effect of an error on the result in the district court is uncertain . . . indeterminate or only speculative, we cannot conclude that appellant's substantial rights have been affected." *United States v. Lombardozzi*, 491 F.3d 61, 74 (2d Cir. 2007) (internal quotation marks omitted). Here,

9

the government adduced overwhelming evidence of Worjloh's guilt. That evidence included his inculpatory statements, physical evidence linking Worjloh to the seized narcotics and firearms, and the powerful testimony of several cooperating witnesses. Given this strong evidence of guilt, we believe it highly unlikely that the challenged instruction improperly influenced the jury.

**III. Sentencing**

Finally, Worjloh claims that the district court abused its discretion by finding him responsible for a higher drug quantity than was submitted to the jury, by applying a three point role enhancement based upon its finding that he was a supervisor of five or more participants of the conspiracy under U.S.S.G. § 3B1.1(b), and by applying a two point obstruction of justice enhancement. His contentions fail.

As to drug quantity, the judge below noted that "I presided at this trial," and he was fully capable of determining the relevant drug quantity and Worjloh's role in the conspiracy. Worjloh himself told agents that he distributed anywhere from 16 to 32 grams of crack cocaine over a seven-month period. A corroborating witness also testified about the quantities he distributed for Worjloh, putting the total amount distributed at over 1.5 kilograms. Similarly, the district court found by a preponderance of the evidence that "the operation this defendant was engaged in and managed was a substantial extensive drug distribution operation." *See United States v. Garcia*, 413 F.3d 201, 224 (2d Cir. 2005).

As for the two-level obstruction enhancement under § 3C1.1, the district court found that Worjloh committed perjury when testifying. Where, as here, "a defendant objects to a sentence enhancement resulting from [his] trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of,

justice, or an attempt to do the same[.]" *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). The district court made specific findings that Worjloh had committed extensive perjury based on his statements at trial regarding use of a bank card. We see no reason to disturb these findings.

After filing his appeal, Worjloh requested a remand under *Kimbrough v. United States*, 128 S. Ct. 558 (2007). In *Kimbrough*, the Supreme Court stated following the sentence in this case that district courts may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses. *See id.* at 564. Accordingly, we now vacate Worjloh's sentence and remand to allow the district court to determine whether it would impose a different sentence given its discretion to depart from the Guidelines for crack cocaine. *See United States v. Regalado*, 518 F.3d 143 (2d Cir. 2008).

**CONCLUSION**

For the aforementioned reasons, the judgment of the district court is affirmed. However, Worjloh's sentence is vacated and is remanded to the district court for further consideration in accordance with this opinion.