11-2888-cr
United States v. Nosworthy

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 11ᵗʰ day of April, two thousand twelve.

PRESENT: JOHN M. WALKER, JR.,
GERARD E. LYNCH,
RAYMOND J. LOHIER, JR.,
*Circuit Judges.*

_____

UNITED STATES OF AMERICA,
*Appellee*,

v.                                                                    No. 11-2888-cr

PAUL NOSWORTHY,
*Defendant-Appellant.*

_____

FOR APPELLANT: DIARMUID WHITE (Brendan White, *on the brief*), White & White, New York, NY.

FOR APPELLEE: JOHN P. NOWAK, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

On June 11, 2007, two police officers directed defendant Paul Nosworthy to exit his parked vehicle, and then searched his person and discovered a firearm. Nosworthy was subsequently indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Prior to trial, he moved to suppress the firearm as the product of an illegal search. The district court denied the motion, and Nosworthy was later convicted following a jury trial. He now appeals, arguing that the district court erred by denying his suppression motion and by denying his post-trial motion for a new trial in light of evidence that was allegedly improperly withheld by the government. For the reasons that follow, we affirm the judgment of the district court. We assume the parties' familiarity with the underlying facts and procedural history of the case.

I. Suppression Motion

When reviewing a district court's denial of a motion to suppress evidence, we review its factual findings for clear error, viewing the evidence in the light most favorable to the government, and review its conclusions of law *de novo*. See United States v. Worjloh, 546 F.3d 104, 108 (2d Cir. 2008). A factual finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Sash, 396 F.3d 515, 521 (2d Cir. 2005) (internal quotation marks omitted). In cases where "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. (internal

quotation marks omitted). Factual findings that are based on credibility determinations are entitled to "particularly strong deference." United States v. Mendez, 315 F.3d 132, 135 (2d Cir. 2002).

Officers Christopher Lesiewicz and George Dumont of the New York City Police Department both testified during the initial suppression hearing. Officer Lesiewicz testified that he and Dumont first noticed Nosworthy's vehicle because it was "double-parked," by which Lesiewicz claimed to mean that it was parked "five or six feet" from the curb. He further testified that once he approached the vehicle, Nosworthy reached for his rear pants pocket several times, prompting him to order Nosworthy to exit the car for a pat-down. According to Lesiewicz, as Nosworthy opened the door, Lesiewicz observed a marijuana cigarette on top of the car's center console. Lesiewicz testified that, as Nosworthy was leaving the vehicle, Nosworthy's hand again went to his back pants pocket, at which time Lesiewicz reached into the pocket and retrieved a firearm. According to Lesiewicz, after a brief struggle, Nosworthy took back the gun, Lesiewicz drew his own gun, and Nosworthy threw his gun away and was ultimately arrested. Officer Dumont's testimony was generally consistent with Lesiewicz's, although Dumont suggested that Nosworthy's "double-parked" car was parked "approximately three feet" from the curb.

The defense argued that the officers were not credible, noting, among other things, that a DNA test of the marijuana cigarette showed that the cigarette contained DNA from two unidentified men, but not from either Nosworthy or his passenger, that there were inconsistencies in the police officers' various written and testimonial descriptions of the arrest regarding whether the cigarette was lit and whether the officers smelled the odor of marijuana

3

when they approached the car, and that their idiosyncratic definition of "double-parked" may have been concocted to conform their testimony that the car was too far from the curb to an earlier assertion that the car had been double-parked.

At the end of the initial suppression hearing, the district court noted that there were "troubling" inconsistencies in the record regarding the marijuana cigarette, and stated that it did not "know what [it] would do, frankly, if that was the only thing before the court." Nonetheless, the court found that the stop and search were permissible for an independent reason: that Nosworthy had committed a traffic violation by parking more than a foot from the curb. See N.Y. Veh. & Traf. Law § 1203(b) (providing that, unless angled parking is authorized, vehicles parked on a one-way roadway must be parked parallel to and within twelve inches of the curb). In reaching this conclusion, the court noted that it found the officers' testimony on the location of the car "totally credible." Having determined that the initial stop was lawful, the court went on to find that Officer Lesiewicz was entitled to ask Nosworthy to step out of the car. The court also found that Lesiewicz's testimony that Nosworthy made furtive movements towards his rear pocket was credible, and therefore concluded that the search of Nosworthy's person was lawful. Based on these findings, the court denied Nosworthy's suppression motion.

Eighteen months later, the district court re-opened the suppression hearing to permit testimony from Edmundo Abrigande, a civilian bystander who had observed some of the incident and who testified that Nosworthy's car was parked "the right distance" under the one-foot rule – a rule that Abrigande was aware of at the time of Nosworthy's arrest because he had recently taken his driving test. The district court chose not to credit Abrigande's testimony regarding the distance between Nosworthy's car and the curb, noting that Abrigande had

4

admitted that he had not actually looked at Nosworthy's tires.  Accordingly, the court denied Nosworthy's renewed suppression motion.[1]

Nosworthy argues that the district court erred by crediting the testimony of Officers Lesiewicz and Dumont, noting several concerning aspects of their testimony.  For example, Nosworthy notes that the affidavit Lesiewicz filed in state court shortly after the arrest described Nosworthy's vehicle as "double parked," and that under New York law double-parking is defined as being parked on the roadway side of a parked vehicle, rather than a few feet from the curb.  See N.Y. Veh. & Traf. Law § 1202(a)(1) (defining double parking as "[s]top[ping], stand[ing] or park[ing] a vehicle . . . [o]n the roadway side of any vehicle stopped, standing or parked at the edge or curb of a street").[2]  Nosworthy also emphasizes that Abrigande's testimony directly contradicted that of the officers, and that Abrigande had no apparent incentive to lie and, indeed, had been relied upon in other respects by the government at trial as a neutral, credible bystander witness.  Moreover, Nosworthy argues that the fact that the DNA test found neither Nosworthy's nor the passenger's DNA on the marijuana cigarette recovered from the car—but did find the DNA of two other unidentified men—should have led the district court to conclude that the cigarette was planted by the officers and to discredit all of the officers' testimony.

---

[1] Abrigande also testified that Nosworthy's car was parked in a "No Parking" zone.  The district court invoked this violation as an alternative ground for sustaining the officers' stop and search, although there was no evidence suggesting that the officers were aware that Nosworthy was parked in a "No Parking" zone.  The government does not press this alternative ground on appeal, and we do not reach its merits.

[2] This is not only a legal definition. According to various dictionaries, it is also the common English vernacular definition of the term.  See, e.g., The American Heritage Dictionary of the English Language 539 (5th ed. 2011) ("To park alongside another vehicle already parked parallel to the curb."); Merriam-Webster's Collegiate Dictionary 347 (10th ed. 1998) ("To park (a vehicle) beside a row of vehicles already parked parallel to the curb").  We have found no legal or lay source that defines the term as it was used by the officers in this case.

These are strong arguments, and a different factfinder might well have found them persuasive and concluded that the officers' testimony was less than credible. Nonetheless, we cannot say that the district court—which had the benefit of observing the testimony of the witnesses—clearly erred in crediting the officers' testimony and discounting the testimony favored by Nosworthy. See Mendez, 315 F.3d at 135 (noting that credibility determinations are entitled to "particularly strong deference"). Throughout their testimony, the officers remained consistent in using the term "double parking" to refer to being parked several feet from the curb. The district court plausibly discredited Abrigande's testimony, given that Abrigande's attention was likely more focused on the arrest than the precise location of Nosworthy's car, and that Abrigande admitted that he did not look at Nosworthy's tires. Finally, there are possible explanations other than police misconduct for the results of the DNA test; for example, the cigarette may have been smoked by prior passengers in the car. In any event, the district judge placed no weight on the testimony about that subject, which he found "troubling." Even if the police did testify dishonestly regarding the marijuana cigarette, the district court was not required to conclude that they also lied about where Nosworthy's car was parked. Under the deferential standard of review that applies to credibility determinations, we cannot say that the district court committed clear error in crediting the officers' testimony regarding Nosworthy's traffic violation. Accordingly, we can find no error in the denial of Nosworthy's motion to suppress.

## II. New Trial Motion

We review the denial of a Rule 33 motion "for an abuse of discretion" and "accept the district court's factual findings unless they are clearly erroneous." United States v. McCourty,

562 F.3d 458, 475 (2d Cir. 2009) (internal quotation marks omitted). Motions for a new trial "should be granted only with great caution and in the most extraordinary circumstances." United States v. Stewart, 433 F.3d 273, 296 (2d Cir. 2006) (internal quotation marks omitted).

In his Rule 33 motion, Nosworthy argued that, three months after arresting Nosworthy, Officer Lesiewicz gave suspiciously similar testimony at a suppression hearing in United States v. Esterine, No. 07-CR-258, 2007 WL 3274887 (E.D.N.Y. Nov. 5, 2007). In Esterine, Lesiewicz testified that while on patrol in a police van driven by Officer Dumont, he observed a car illegally parked partially on the street and partially on the curb. Esterine, who was sitting on the passenger side, was alone in the vehicle. After approaching, Lesiewicz looked through the car window and saw a plastic bag containing marijuana and cigarette rolling papers. He also smelled the aroma of marijuana. After asking Esterine to exit the vehicle, Lesiewicz patted him down for weapons and retrieved a firearm from Esterine's rear waistband.

Nosworthy's Rule 33 motion claimed that this testimony – which his attorney discovered online after the trial – constituted newly discovered evidence and that the government's failure to disclose it earlier in the proceedings violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963); the Jencks Act, 18 U.S.C. § 3500; and Federal Rule of Criminal Procedure 26.2. Nosworthy accordingly asked the district court to re-open his suppression hearing and hold a new trial. The court denied Nosworthy's motion, holding that Nosworthy had not proven a violation of Brady, the Jencks Act, or Rule 26.2, and that the Esterine testimony did not constitute newly discovered evidence for purposes of Rule 33.

The district court did not abuse its discretion in denying Nosworthy's Rule 33 motion. First, the district court did not err in rejecting Nosworthy's argument that the testimony

7

constituted newly discovered evidence. Under Rule 33, a motion for a new trial based on newly discovered evidence will be granted "'only upon a showing that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal.'" United States v. Owen, 500 F.3d 83, 87 (2d Cir. 2007) (quoting United States v. Alessi, 638 F.2d 466, 479 (2d Cir. 1980)). In this case, there is no reason why the simple Google search that uncovered the Esterine testimony could not have been performed before trial. Moreover, earlier access to the Esterine testimony would not likely have resulted in Nosworthy's acquittal. The testimony pertained to an entirely different arrest, and the details of that arrest were distinct in several respects, undercutting the inference that the police used a "canned" story. To the extent the two fact patterns were similar, that similarity could well result from the fact that street narcotics officers like Lesiewicz and Dumont frequently encounter traffic violations and the public use of marijuana in the course of their duties.

Second, the district court correctly found that the government was not required to turn over the Esterine testimony under Brady. For the failure to disclose evidence to be a Brady violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [prosecution], either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). We agree with the district court that the Esterine testimony was neither exculpatory nor impeaching. It concerned a wholly unrelated criminal arrest, and the magistrate judge in Esterine had specifically found the officers' testimony credible. It is uncertain whether the evidence would have furthered defense counsel's vigorous

8

effort to impeach the officers, or would instead have undercut Nosworthy's case by demonstrating that street narcotics officers in the ordinary course of their duties sometimes make similar stops under similar circumstances. See United States v. Persico, 645 F.3d 85, 111 (2d Cir. 2011) ("[U]ndisclosed impeachment evidence is not material in the Brady sense when, although possibly useful to the defense, it is not likely to have changed the verdict." (internal quotation marks omitted)). In this regard, we note that the district judge, who would have been the factfinder at a renewed suppression hearing, favored the latter theory.

Finally, the government did not violate the Jencks Act by failing to turn over the Esterine testimony. The Jencks Act provides that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). A "statement" includes a verbatim transcription of an oral statement, such as a court transcript. See 18 U.S.C. § 3500(e). We have held that a witness's statement "must at least relate generally to the events and activities testified to before the statement must be produced" pursuant to the Jencks Act. United States v. Pacelli, 491 F.2d 1108, 1118 (2d Cir. 1974) (internal quotation marks omitted); see also United States v. Bin Laden, 397 F. Supp. 2d 465, 492 (S.D.N.Y. 2005). Statements which are "merely incidental or collateral" need not be disclosed under the Act. Pacelli, 491 F.2d at 1118 (internal quotation marks omitted). Similarly, "not all statements that might in some way be helpful in impeaching the witness are producible." United States v. Birnbaum, 337 F.2d 490, 498 (2d Cir. 1964); see also Bin Laden, 397 F. Supp. 2d at 493. We agree with the district court that the officers' testimony in Esterine was not "related" to their

9

testimony in this case. The testimony did not concern any of the facts surrounding Nosworthy's arrest, and was of only marginal impeachment value. We decline to embrace a reading of the Jencks Act that would require the disclosure of information from an entirely unrelated case just because it involved a broadly similar – and far from uncommon – fact pattern.[3]

We have considered Nosworthy's other arguments and find them to be without merit. For the foregoing reasons, the judgment of conviction is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Nosworthy's argument that the Esterine testimony should have been disclosed pursuant to Rule 26.2, which contains a similar "relatedness" requirement, fails for the same reasons. See Fed. R. Crim. P. 26.2 ("After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that *relates* to the subject matter of the witness's testimony." (emphasis added)).